2002 ND 29

**Jacqueline KNUTSON, Plaintiff and Appellant,**

v.

**Richard D. KNUTSON, Defendant and Appellee.**

**No. 20010238.**

Supreme Court of North Dakota.

Feb. 20, 2002.

Bruce A. Schoenwald, Stefanson, Plambeck, Foss & Fisher, Moorhead, MN, for plaintiff and appellant.

Robert J. Schultz, Conmy Feste, Ltd., Fargo, ND, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Jacqueline Knutson appealed from an order denying her motion to vacate a divorce decree entered upon a stipulated settlement agreement. We hold the trial court did not abuse its discretion in ruling that sufficient grounds for disturbing the finality of the divorce decree were not established, and we therefore affirm the order denying the motion to vacate.

I

[¶ 2] Richard and Jacqueline Knutson were married in 1989. They have a

daughter of their marriage, Ashley, who was born on March 26, 1990. Problems developed in the Knutson's marriage, and, after securing the services of a lawyer, Jacqueline Knutson filed a divorce action on August 7, 2000. The parties entered into a stipulated agreement in November 2000, dividing the marital property and providing for joint physical and legal custody of Ashley, with each party having custody of Ashley for an equal amount of time. The stipulation provided that neither party would receive spousal support or child support from the other party. After a hearing, attended by Richard Knutson but not by Jacqueline Knutson, the trial court entered a decree dissolving the marriage and setting the terms of the divorce in accordance with the parties' stipulation.

[¶ 3] On May 18, 2001, Jacqueline Knutson filed a motion with the trial court, under N.D.R.Civ.P. 60(b), seeking to vacate the divorce decree on the grounds that the stipulated agreement was unconscionable and that it was signed by her as a result of her husband's undue influence. The trial court denied the motion to vacate.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Jacqueline Knutson's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 5] On appeal, Jacqueline Knutson asserts the trial court abused its discretion in refusing to vacate the divorce decree. She claims the decree is unconscionable and the parties' stipulation, upon which the terms of the decree were based, was signed by her as a result of Richard Knutson's undue influence.

[¶ 6] Under N.D.R.Civ.P. 60(b)(iii), the court can set aside a judgment for fraud, misrepresentation, or other misconduct of an adverse party. Also, under N.D.R.Civ.P. 60(b)(vi), the court can set aside a judgment for any other reason justifying such relief. This rule provides the ultimate safety valve to avoid enforcement by vacating a judgment to accomplish justice. *Kopp v. Kopp*, 2001 ND 41, ¶ 10, 622 N.W.2d 726.

[¶ 7] A trial court's decision to deny relief under N.D.R.Civ.P. 60(b) will not be overturned on appeal absent an abuse of discretion. *Krizan v. Krizan*, 1998 ND 186, ¶ 13, 585 N.W.2d 576. We do not determine whether the court was substantively correct in entering the judgment from which relief is sought, but determine only whether the court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not established. *Terry v. Terry*, 2002 ND 2, ¶ 4, 638 N.W.2d 11. An abuse of discretion occurs only when the trial court acts in an arbitrary, unconscionable, or unreasonable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* Rule 60(b) attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done, and, accordingly, the rule should be invoked only when extraordinary circumstances are present. *Kopp*, 2001 ND 41, ¶ 9, 622 N.W.2d 726.

[¶ 8] This Court encourages peaceful settlements of disputes in divorce matters, and the strong public policy favoring prompt and peaceful resolution of divorce disputes generates judicial favor of the adoption of a stipulated agreement of the parties. *Toni v. Toni*, 2001 ND 193, ¶ 10, 636 N.W.2d 396. If the judgment

sought to be set aside is entered based on a stipulation of the parties, the party challenging the judgment has the additional burden of showing that under the law of contracts there is justification for setting aside the stipulation. *Terry*, 2002 ND 2, ¶ 4, 638 N.W.2d 11. A district court, in considering whether a settlement agreement between divorcing parties should be enforced, should make two inquiries: (1) whether the agreement is free from mistake, duress, menace, fraud, or undue influence; and (2) whether the agreement is unconscionable. *Weber v. Weber,* 1999 ND 11, ¶¶ 12–13, 589 N.W.2d 358.

### III

█ [¶ 9] Jacqueline Knutson asserts the parties' stipulation was the product of Richard Knutson's undue influence upon her. More specifically, she asserts she was suffering from depression at the time these proceedings occurred, and her husband, taking advantage of her mental state, verbally pressured her to sign the stipulation. In its order denying the motion to vacate the original divorce decree, the trial court found:

> [A]t all times during the dissolution proceedings, Jacqueline was represented by attorney Wayne Anderson who advised her against agreeing to joint custody and not to waive child support and spousal support.... [T]here is no evidence in the record to suggest that Anderson provided inadequate or inappropriate legal advice or should have done more with respect to his representation of Jacqueline. In addition, Jacqueline is intelligent and has financial acumen based on her bookkeeping and business experience. Thus, at a minimum, she was fully capable of understanding the financial ramifications of the settlement agreement.

In addition, the record also shows that Jacqueline and her attorney requested that the proposed settlement agreement be revised as to paragraphs 11 and 25. This fact shows that Jacqueline, through her attorney's assistance, was capable of expressing her dissatisfaction with certain terms of the settlement agreement.

[¶ 10] There is no evidence Jacqueline Knutson was so suffering from depression or stress during the proceedings that she was incapable of making rational decisions or of entering into a valid contractual agreement. She testified that she was not taking any medications in the year 2000 or when the stipulation was negotiated and signed. When she decided to end the marriage, she withdrew a considerable amount of cash from a joint account and purchased a new home for herself and Ashley, while her husband was out of town. Jacqueline Knutson then retained an attorney and filed for divorce. With the assistance of her attorney, she sought and obtained an interim court order awarding her spousal support of $2,000 per month and child support of $1,000 per month. Although Richard Knutson tried to persuade his wife that she should fire her attorney because he was charging too much money and was not needed to resolve the divorce, she retained her attorney throughout the entire proceedings. She also discussed the stipulated agreement with her attorney prior to signing it. He advised her that the property distribution provisions were reasonable but she should not sign, because the stipulation contained no provision for her to receive spousal support and because it included a provision for the parties to have joint physical custody of Ashley. Acting on her attorneys' advice, Jacqueline Knutson had two provisions of the stipulation amended to her liking. Acting against her attorney's advice, however, she decided to sign the agreement without changing the custody or support provisions.

[¶ 11] *Black's Law Dictionary* 1529 (7th ed.1999) defines "undue influence" as "the improper use of power or trust in a way that deprives a person of free will and substitutes another's objective." In the similar context of a will contest, this Court has defined the term "undue influence" as "the substitution of the purpose and intent of the one exercising influence for the purpose and intent of the testator." *In re Estate of Robinson*, 2000 ND 90, ¶ 10, 609 N.W.2d 745. The evidence does not show Jacqueline Knutson's signing of the stipulation was the product of Richard Knutson's will or purpose rather than her own.

[¶ 12] Jacqueline Knutson concedes she has a college degree in business and has experience in maintaining records in accounting for business enterprises. Based partly on these factors, the district court concluded "Jacqueline is intelligent and has financial acumen" and is "fully capable of understanding the financial ramifications of the settlement agreement."

[¶ 13] In denying the request to vacate the divorce decree, the trial court concluded Jacqueline Knutson's signing of the stipulated agreement, although "not entirely free from duress or undue influence by Richard," was not the product or result of his influence or coercion. The trial court did not find that under the circumstances Richard Knutson's purpose and will had been substituted in place of Jacqueline Knutson's purpose and will. We conclude the trial court's findings on this issue are not clearly erroneous. N.D.R.Civ.P. 52(a). We further conclude the trial court's refusal to vacate the divorce decree under N.D.R.Civ.P. 60(b)(iii), on the ground the stipulation was the product of undue influence or coercion, was not an abuse of discretion.

IV

[¶ 14] Jacqueline Knutson asserts the trial court should have vacated the original divorce decree because it is unconscionable. Richard Knutson's financial statement shows total marital assets of $2,143,500. Under the decree, Jacqueline Knutson received property worth over $500,000, including a certificate of deposit valued at $350,000; a home free of debt, valued at $143,500; a 1997 Suburban free of debt, valued at $28,000; and some significantly valued personal property. She did not receive spousal support under the decree, but she earned $25,000 in the year 2000 and expected to earn at least $40,000 in the year 2001. She also asserts that her husband would earn about $120,000 in the year 2001. Richard Knutson claims his self-employed business selling fish locators has experienced a substantial economic downturn, and he disagrees with his wife's estimate of his earning potential. Jacqueline Knutson does not dispute that between $1,200,000 and $1,400,000 of the marital property was inherited by Richard Knutson from his relatives during the marriage.

[¶ 15] This case is clearly distinguishable from the circumstances in *Crawford v. Crawford*, 524 N.W.2d 833, 835 (N.D.1994), wherein this Court held a divorce judgment should be vacated because "the stipulation is so one-sided and creates such hardship that it is unconscionable." In *Crawford* the husband was a doctor who was earning $130,000 per year while the wife was working as a meat wrapper for $300 per month. The parties split their personal property, but the husband received the home and was awarded custody of the four children. The wife was given visitation rights, but was ordered to pay $15 per month in child support. In this case, Jacqueline Knutson's income is significantly higher than the wife's income in *Crawford*. Under the parties' stipulation, Jacqueline Knutson has received more

than one-half million dollars in property and she has been awarded equal custodial rights.

[¶ 16] In its order denying the motion to vacate, the trial court stated, in part:

> Anderson [Jacqueline's trial attorney] stated in his deposition that the property distribution of more than $500,000 to Jacqueline was within reason, although he advised her not to sign the stipulated agreement as to the child support and custody terms....
>
> As a whole, the Court does not find that the settlement agreement as to property distribution and waiver of spousal support is so one-sided that no rational, undeluded person would agree to its terms. Thus, the Court concludes that the distribution of property and waiver of spousal support was not unconscionable.

(Citation omitted.) Although the question of unconscionability is one of law, factual findings are necessary for the determination. *Weber*, 1999 ND 11, ¶ 8, 589 N.W.2d 358. We conclude the trial court's findings on this issue are not clearly erroneous. N.D.R.Civ.P. 52(a). While Jacqueline Knutson might have received more favorable terms if she had followed her attorney's advice, we cannot conclude, as a matter of law, the stipulation and decree involved such blatant, one-sided terms that they are unconscionable and unenforceable. *See Terry*, 2002 ND 2, ¶ 12, 638 N.W.2d 11. We further conclude, therefore, the trial court did not abuse its discretion in refusing to vacate the divorce decree on the ground the parties' stipulation and the divorce decree based upon it are unconscionable.

V

[¶ 17] Jacqueline Knutson asserts the decree should be set aside because the provision giving the parties joint physical custody of Ashley and awarding neither party child support renders the decree unconscionable.

[¶ 18] The parties each have custody of Ashley on alternating weekends, from Friday after school until Monday morning. Jacqueline Knutson has custody of Ashley on Mondays and Wednesdays and Richard Knutson has custody of Ashley on Tuesdays and Thursdays. The parties alternate custody on holidays, and each has an uninterrupted period of custody for four weeks during the summer. In its order denying the motion to vacate, the trial court found, in part:

> When determining custody, the Court must consider what is in the best interest of the child.... Although the existing custody arrangement and schedule may not be the most stable, the record shows that Ashley is thriving under the current arrangement. Ashley continues to succeed in school and her extracurricular activities, while at the same time maintaining her individual relationship with each parent. In addition, there do not appear to be any difficulties between Richard and Jacqueline in complying with the custody schedule. Based on these facts, the Court concludes that the custodial arrangement as it currently exists serves Ashley's best interests. Thus, the Court finds no reason to vacate the settlement agreements (sic) as to custody. Accordingly, Jacqueline's motion to vacate the settlement agreement as to custody of Ashley is denied. Based on these findings, the Court need not consider whether Jacqueline is entitled to child support because Ashley will continue to reside with each party fifty percent of the time.
>
> The Court concludes that neither the custody arrangement nor the waiver of child support are unconscionable.

[¶ 19] It is not generally in the best interest of a child to be bandied back and forth between parents in a rotating physical custody arrangement. *Peek v. Berning*, 2001 ND 34, ¶ 19, 622 N.W.2d 186. However, rotating custody arrangements are not per se erroneous when supported by findings that alternating custody is in the best interest of the child. *Id.* at ¶ 20. Generally, rotating custody is only in the child's best interest if parents are able to cooperate and set aside their differences and conflicts in their roles as parents. *Id.* at ¶ 22. The evidence supports the trial court's findings that Ashley is "thriving" under the current custody arrangement and that Richard and Jacqueline Knutson have fully cooperated in their roles as parents, making the rotating custody arrangement work.

[¶ 20] Child support determinations involve questions of law subject to the de novo standard of review, findings of fact subject to the clearly erroneous standard of review, and, in some limited areas, matters of discretion subject to the abuse of discretion review. *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines in determining an obligor's child support obligation. *Id.* The child support guidelines provide a schedule of child support to be paid by the noncustodial parent to the custodial parent. However, the guidelines do not address the issue of support when parents jointly share physical custody of their child for equal amounts of time. When the guidelines do not address a situation, the trial court must enter an order appropriate to the needs of the child and the ability of the parent to pay. *See Montgomery v. Montgomery*, 481 N.W.2d 234, 235 (N.D.1992).

[¶ 21] Under N.D.C.C. § 14–05–24, the trial court retains continuing jurisdiction to modify child support and child custody upon a showing of changed circumstances. *Toni*, 2001 ND 193, ¶¶ 9, 11, 636 N.W.2d 396. We conclude the trial court did not abuse its discretion in refusing to vacate the divorce decree on the ground that the child custody and child support provisions are unconscionable. The decree need not be vacated for the court to revisit those issues.

## VI

[¶ 22] The district court's order denying Jacqueline Knutson's motion to vacate the November 27, 2000, divorce judgment is affirmed. Both parties have requested an award of attorney fees for the appeal, without specifying a reason, statute, or rule upon which their requests are based. Neither party is awarded attorney fees for the appeal. Costs are taxed against appellant, Jacqueline Knutson, as provided under N.D.R.App.P. 39.

[¶ 23] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, concurring in part and dissenting in part.

[¶ 24] I concur in parts IV and V of the majority opinion, but must respectfully dissent from the remainder of the opinion.

[¶ 25] In *Weber* II, we said a trial court should make two inquiries when considering to vacate a judgment based on a stipulation between divorcing parties: (1) whether the agreement is free from mistake, duress, menace, fraud, or undue influence; and (2) whether the agreement is unconscionable. *Weber v. Weber*, 1999 ND 11, ¶ 12, 589 N.W.2d 358. This means the trial court must examine the agreement to determine if it is the product of duress or undue influence. If it is, then the agree-

ment must be rescinded, because it was not entered into voluntarily. If the agreement was not a product of duress or undue influence under N.D.C.C. § 9–09–02(1), then the trial court must determine whether the agreement is so one-sided that it is unconscionable. *Weber*, at ¶ 13.

[¶ 26] The trial court, in its findings of fact, notes that Jacqueline felt "threatened and coerced" when she met alone with Richard on November 9; that Jacqueline stated "Richard threatened to use their daughter 'during all of this' and that he threatened to put her on the stand and have her testify that she wanted to live with him"; that Jacqueline stated she was "in an extremely weakened state, and that she felt like [she] had to comply with the terms proposed by Richard"; that Jacqueline stated that "Richard was calling every day and he was trying to convince her to agree to the settlement agreement"; and that Jacqueline stated when she told Richard she wanted to seek another attorney's opinion on Richard's proposed stipulation he told her if she did that she " 'could forget about settling out of court' and that it 'would take too much time.' "

[¶ 27] Contrary to what the majority opinion states, the trial court does not state the agreement was not the product of Richard's undue influence or coercion. The trial court in its application of the law to the facts stated:

> The Court is mindful of the fact that Jacqueline was likely depressed and distraught during the dissolution proceedings and that she may have *agreed to settlement* to avoid Ashley's involvement in the proceedings and *because of Richard's coercive behavior. Although the settlement agreement was not entirely free from duress or undue influence by Richard,* the Court finds, however, that the agreement is not unconscionable as to distribution of property.

(Emphasis added.) .The trial court's analysis is unclear in my opinion. Did the trial court conclude the agreement was a product of "duress or undue influence"? If it did, then the agreement must be rescinded. Or did the trial court conclude that even if the agreement was a product of "duress or undue influence," it was not unconscionable and, therefore, not void? In the latter case, the trial court would have incorrectly applied the law and, consequently, abused its discretion. Because I am unable to ascertain the trial court's rationale and legal analysis, I would reverse and remand for the trial court to clarify its findings and conclusions of law.

[¶ 28] I respectfully dissent.

[¶ 29] MARY MUEHLEN MARING.