2009 ND 107

**John EBERLE, Plaintiff and Appellee**

v.

**Heidi EBERLE, Defendant and Appellant.**

**No. 20080317.**

Supreme Court of North Dakota.

June 17, 2009.

Rehearing Denied July 9, 2009.

478

Paul Henry Myerchin, Bismarck, for plaintiff and appellee.

Donavin L. Grenz, Linton, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Heidi Eberle appealed from an order denying her request for attorney's fees, an order denying her motion to compel compliance with N.D.R.Ct. 8.3(a), and an order denying relief from a divorce judgment. We conclude her settlement agreement with John Eberle is unconscionable, and we reverse the district court's order denying relief from the judgment and remand for an equitable division of the marital estate. We affirm the district court's orders denying Heidi Eberle's request for attorney's fees and her motion to compel.

I

[¶ 2] John and Heidi Eberle were married in 1996, and have four children. John Eberle is a farmer in rural Emmons County, running a dairy operation and crop farm. Before the marriage, John Eberle farmed approximately 440 acres he had purchased from his parents. In 2004, the parties entered into a contract for deed with John Eberle's mother to purchase another 1,000 acres of farmland. Heidi Eberle was not employed outside of the home during most of the marriage.

[¶ 3] Heidi Eberle and the children moved out of the parties' residence on February 26, 2007. When Heidi Eberle left she took the parties' 2001 Ford Winstar minivan, some clothing, a few household items, other items of personal property, and $5,000 from a joint bank account. Half of the $5,000 was later returned as part of the settlement agreement to pay for credit card debt.

[¶ 4] John Eberle hired an attorney and had a settlement agreement prepared. He testified he believes he gave Heidi Eberle the settlement agreement on either March 8 or 9, 2007, he called her on March 11, 2007, to see if she had signed the agreement, and he picked it up on the morning of March 12, 2007. Heidi Eberle testified John Eberle gave her the settlement agreement on March 12, 2007, he made her sign it that morning, and she did not read the agreement before signing it. Heidi Eberle did not speak to an attorney

before signing the agreement. The settlement agreement was signed on March 12, 2007, and was filed on March 15, 2007, along with the summons and complaint.

[¶ 5] The settlement agreement resolved custody, child support, property division, and debt allocation. Under the terms of the settlement agreement the parties have joint legal custody of the children, Heidi Eberle received primary physical custody, and John Eberle received liberal visitation. John Eberle is required to pay $1,200 in child support each month until the oldest child graduates from high school or reaches the age of nineteen, at which time John Eberle will be entitled to a recalculation of his support obligation. The agreement also provides:

> Either party may request a review concerning the right to receive or obligation to pay child support by applying to the appropriate child support agency for child support services and indicating, in the manner there provided, the desire to have a child support order and the necessity for the same reviewed as required by law.... The parties agree the obligation agreed upon as child support is an upward deviation from what would otherwise be [John Eberle's] support obligation. As substantiated by the attachment, [John Eberle's] support obligation would otherwise be $916.00 per month.

The agreement provides that either party may request review of the right to receive or the obligation to pay child support under N.D.C.C. § 14–09–08.4.

[¶ 6] The settlement agreement states both parties waive any entitlement to receive spousal support. The agreement also divided the parties' property. Heidi Eberle received the 2001 Ford Winstar, her new checking account, any furniture and other personal effects in her possession, and any personal clothing or other close personal effects still remaining in the marital residence. John Eberle received all the real property, including the residence and farmland, a 2001 Ford pickup, all farm equipment, machinery, tools, and other items associated with the farm, his checking account, the household goods and furnishings remaining in the marital residence, and all other items · of personal property in his possession. John Eberle assumed all debt related to the farm and half of the Capital One credit card debt. Heidi Eberle assumed half of the Capital One credit card debt and all other credit card debt.

[¶ 7] The district court entered a judgment incorporating the settlement agreement on March 19, 2007. Heidi Eberle moved for relief from the judgment on January 3, 2008, claiming she did not know or understand what she was doing when she signed the agreement, she was under the influence of prescription drugs, she wanted to talk to a lawyer before she signed but John Eberle would not let her, and he refused to leave her house until she signed the agreement. She also moved for sole custody of the children and for a specific visitation schedule.

[¶ 8] On March 4, 2008, District Court Judge Bruce Haskell issued an order granting Heidi Eberle's motion for relief from the judgment. The court considered whether Heidi Eberle's motion for relief from the judgment should be granted under N.D.R.Civ.P. 60, and found there was no fraud justifying relief from the judgment because there was not any evidence of how the medication may have impacted Heidi Eberle's decision-making or that John Eberle knew the medications affected Heidi Eberle. The court found there were grounds for ordering relief from the judgment under N.D.R.Civ.P. 60(b)(vi) because there was significant marital property, the parties did not discuss the disposition of

the real property and farm equipment, and Heidi Eberle was served with the summons and complaint on the same day she signed the settlement agreement which supported a finding that there was no discussion of the disposition of the marital assets. The court granted Heidi Eberle's motion for relief from the judgment to allow for consideration of an equitable distribution of the marital estate.

[¶ 9] On April 4, 2008, John Eberle moved for certification of the order to allow for an appeal under N.D.R.Civ.P. 54(b). The district court found "Judge Haskell's Memorandum Opinion and Order is not a Final Judgment" and denied John Eberle's motion. Judge Haskell recused himself from hearing any further matters in the case on April 7, 2008. On April 14, 2008, Heidi Eberle filed an answer and counterclaim to John Eberle's initial complaint. She also moved for an award of attorney's fees.

[¶ 10] On May 7, 2008, Heidi Eberle moved to compel John Eberle to comply with N.D.R.Ct. 8.3(a), which requires parties in divorce cases to prepare a joint informational statement and preliminary property and debt listing. Heidi Eberle also requested attorney's fees. Both parties later filed Rule 8.3 informational statements and property and debt listings. On August 7, 2008, District Court Judge Bruce Romanick denied Heidi Eberle's motion to compel, finding the parties had complied with the rule's requirements. The court also denied Heidi Eberle's request for attorney's fees, finding the information about Heidi Eberle's need for attorney's fees did not justify an award and N.D.C.C. § 14–05–23 should not apply because the attorney's fees would be incurred in attempting to obtain relief from the judgment.

[¶ 11] After an October 2008 hearing, District Court Judge Bruce Romanick considered Heidi Eberle's motion for relief from the judgment and found the agreement was free from mistake, duress, menace, fraud, and undue influence, the agreement was not unconscionable, and the agreement is binding and remains in full force and effect.

II

[¶ 12] Judge Haskell's March 2008 order granted Heidi Eberle's motion for relief from the judgment to allow for consideration of an equitable distribution of the marital estate. After a hearing, Judge Romanick found the settlement agreement was free from mistake, duress, menace, fraud, and undue influence, was not unconscionable, and remains in full force and effect, which reversed Judge Haskell's March 2008 decision. At oral argument, questions were raised about whether the March 2008 order could be modified or reversed by the later district court decision.

[¶ 13] The March 2008 order was interlocutory in nature. The court found there were grounds for ordering relief from the judgment, but allowed for further proceedings to equitably distribute the marital estate. John Eberle moved for certification of the order to allow for an appeal, but his motion was denied. Interlocutory orders generally are not appealable and may be revised or reconsidered any time before the final order or judgment is entered. *Tibbetts v. Dornheim*, 2004 ND 129, ¶ 11, 681 N.W.2d 798. The March 2008 order was an interlocutory order and was subject to revision prior to the final order or judgment.

III

[¶ 14] Heidi Eberle argues the settlement agreement was not entered into freely and knowingly, without fraud, duress, menace or undue influence, and the agree-

ment is unconscionable. She claims she was taking medication which affected her ability to think and to resist John Eberle's demands, she wanted custody of the children and believed John Eberle would fight her for custody if she did not do what he wanted, and she was controlled by John Eberle. Heidi Eberle contends the agreement is unconscionable because she had very little time to review the agreement before John Eberle picked it up, she did not meet with an attorney, she signed the agreement under pressure from John Eberle, the terms and conditions are one-sided and unfair, and the agreement is one no rational person would accept.

[¶ 15] In granting a divorce, a district court is required to equitably distribute the parties' property and debts, which includes recognizing valid settlement agreements. *Kramer v. Kramer,* 2006 ND 64, ¶ 6, 711 N.W.2d 164. "This Court encourages peaceful settlements of disputes in divorce matters, and the strong public policy favoring prompt and peaceful resolution of divorce disputes generates judicial favor of the adoption of a stipulated agreement of the parties." *Knutson v. Knutson,* 2002 ND 29, ¶ 8, 639 N.W.2d 495. " 'To the extent that competent parties have voluntarily stipulated to a particular disposition of their marital property, a court ordinarily should not decree a distribution of property that is inconsistent with the parties' contract.' " *Kramer,* at ¶ 6 (quoting *Wolfe v. Wolfe,* 391 N.W.2d 617, 619 (N.D.1986)). However, a court should not blindly accept settlement agreements. *Kramer,* at ¶ 7. The court has a duty to make an equitable distribution of the property, and that duty includes the authority to decide whether an agreement was executed as a result of mistake, duress, fraud, menace, or undue influence. *Id.*

[¶ 16] Under N.D.R.Civ.P. 60(b)(iii) a court can set aside a judgment

for fraud, misrepresentation, or other conduct of an adverse party. The court can also set aside a judgment under N.D.R.Civ.P. 60(b)(vi) for any other reason justifying relief. A district court's decision to deny a motion for relief from the judgment under N.D.R.Civ.P. 60(b) will not be reversed on appeal unless the court abused its discretion in ruling there were not sufficient grounds for relief from the judgment. *Knutson,* 2002 ND 29, ¶ 7, 639 N.W.2d 495. A court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.*

[¶ 17] When a judgment is entered based on the parties' stipulation, the party challenging the judgment must show there is a justification for setting aside the stipulation under the law of contracts. *Knutson,* 2002 ND 29, ¶ 8, 639 N.W.2d 495. When a settlement agreement between divorcing parties is challenged, the court should consider whether the agreement was entered into freely and knowingly, without mistake, duress, menace, fraud, or undue influence, and whether the agreement is unconscionable. *Id.* Whether an agreement is unconscionable is a question of law, but findings of fact are necessary to make a determination. *Weber v. Weber,* 1999 ND 11, ¶ 8, 589 N.W.2d 358. Findings of fact will not be reversed on appeal unless they are clearly erroneous, and a finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or this Court is convinced a mistake has been made. *Id.*

[¶ 18] An agreement is unconscionable if it is one no rational, undeluded person would make, and no honest and fair person would accept, *Christian v. Christian,* 2007 ND 196, ¶ 29, 742 N.W.2d

819, or is blatantly one-sided and rankly unfair, *Kramer,* 2006 ND 64, ¶ 15, 711 N.W.2d 164. " 'Unconscionability is a doctrine by which courts may deny enforcement of a contract "because of procedural abuses arising out of the contract formation, or because of substantive abuses relating to the terms of the contract." ' " *Id.,* at ¶ 7 (quoting *Weber,* 1999 ND 11, ¶ 11, 589 N.W.2d 358). To determine a settlement agreement is unconscionable there must be some showing of both procedural and substantive unconscionability and courts must balance the various factors, viewed in totality, to make its determination. *Strand v. U.S. Bank Nat'l Ass'n ND,* 2005 ND 68, ¶ 12, 693 N.W.2d 918. Procedural unconscionability focuses on the formation of the agreement and the fairness of the bargaining process. *Id.* at ¶ 13. Substantive unconscionability focuses on the harshness or one-sidedness of the agreement's provisions. *Id.* at ¶ 20.

**A**

■ [¶ 19] Whether a settlement agreement was free from mistake, duress, menace, fraud, or undue influence and whether the agreement is procedurally unconscionable are separate issues. However, both issues are concerned with the circumstances surrounding the formation of the agreement, and because of the facts and circumstances of this case we will consider the two issues together.

■ [¶ 20] An agreement may be free from mistake, duress, menace, fraud, or undue influence and still be procedurally unconscionable. While there may not be mistake, duress, menace, fraud, or undue influence, one party may be guilty of such oppressive conduct to secure the agreement that the agreement should not be enforced. *See Derby v. Derby,* 8 Va. App. 19, 378 S.E.2d 74, 79 (1989). Settlement agreements in divorce cases are more susceptible to overreaching and oppressive conduct because of the relationship between the husband and wife, particularly when the negotiations are between the parties rather than through their lawyers. *Id.* Behavior that may not constitute fraud, duress, mistake, menace, or undue influence in an arms length context may be sufficient to make an agreement unconscionable when the relationship is used to take advantage of a situation and achieve an oppressive result. *Id.*

[¶ 21] Heidi Eberle argues the settlement agreement is unconscionable and was not free from mistake, duress, menace, fraud, or undue influence. She claims she did not contact an attorney before signing the agreement, she believed John Eberle would fight for custody of the children unless she gave him what he wanted, she was on medication which affected her ability to think and to resist John Eberle's demands, and she was controlled by John Eberle.

[¶ 22] The district court found Heidi Eberle's claims that she was on medication that affected her ability to think and to resist John Eberle's demands were not credible. The court found Heidi Eberle's statements that the medication affected her were the only evidence supporting her claims and other testimony and affidavits did not indicate Heidi Eberle was under the influence of medication. There was testimony Heidi Eberle was acting normally and did not appear to be under the influence of any medication around the time she signed the agreement. The evidence supports the court's findings.

[¶ 23] The court found Heidi Eberle's testimony about signing the agreement was inconsistent and not credible, Heidi Eberle read the agreement or had an opportunity to read the agreement, and the agreement contained what Heidi Eberle wanted. The court also found it was rele-

vant that Heidi Eberle abided by the agreement by taking custody of the children, receiving child support, paying bills she was required to pay under the agreement, and taking property she was given under the agreement. Based on these findings the district court concluded the agreement was free from mistake, duress, menace, fraud and undue influence.

[¶ 24] Although Heidi Eberle did pay certain debts she was required to pay and took what property she was given under the agreement, this does not affect her claim for relief from the judgment. *See In re Marriage of Brockman,* 194 Cal. App.3d 1035, 240 Cal.Rptr. 96, 100 (1987); *Radigan v. Radigan,* 465 N.W.2d 483, 485 (S.D.1991). *See also Sommers v. Sommers,* 2003 ND 77, ¶¶ 5–6, 660 N.W.2d 586 (a party does not waive the right to appeal a divorce judgment by accepting benefits of the judgment when the party claims she should be awarded more benefits and the opposing party does not claim she is entitled to less). Heidi Eberle did not receive and accept any advantages and benefits she would not be entitled to if the judgment is reversed because it is inconceivable that she may receive less than she is entitled to under the original judgment.

[¶ 25] John Eberle testified that he talked about the terms of the divorce with Heidi Eberle, and she told him she wanted physical custody of the kids, $1,200 per month in child support, and she wanted him to keep the land for the children to inherit. John Eberle testified he gave Heidi Eberle the settlement agreement on March 8th or 9th, he called her on March 11th to see if she was going to sign the agreement, and he picked up the signed agreement on March 12th. John Eberle's brother testified that he spoke to Heidi Eberle on March 10th, Heidi Eberle told him she was not taking half of everything and she mentioned the divorce paperwork.

She testified John Eberle brought her the settlement agreement on March 12th, he told her she needed to sign some documents so he could bring them to his lawyer, and she did not know she was signing the settlement agreement. In an affidavit, Heidi Eberle claimed John Eberle brought her the settlement agreement on March 12th, she did not read the agreement, she wanted to take it to an attorney but John Eberle told her she could not because he needed to get it back to his attorney, and she signed it to get John Eberle out of the house.

[¶ 26] The court found Heidi Eberle's claims were inconsistent and were not credible because at one point she claimed she did not know she was signing the agreement and she signed it along with other paper work, but then later claimed she signed it without reading it and wanted to seek advice from an attorney but John Eberle would not let her. The court found, "Heidi has confused her 'stories' as to when she signed documents and how she signed them." On appeal, this Court will not reweigh evidence or reassess a witness's credibility when the evidence supports the court's findings. *Young v. Young,* 2008 ND 55, ¶ 6, 746 N.W.2d 153. The evidence supports the court's findings that Heidi Eberle had an opportunity to read the agreement and that she knew what she was signing. An agreement will not be rescinded on the grounds of mistake or fraud if a party fails to read the agreement before signing if he or she had the opportunity to read the agreement without being misled as to its contents. *See Kramer,* 2006 ND 64, ¶ 12, 711 N.W.2d 164; *David v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 440 N.W.2d 269, 273–74 (N.D.1989). The evidence supports the court's finding that the agreement was free from mistake, menace, and fraud.

[¶ 27] However, the court also found Heidi Eberle was not pressured or under duress at the time she signed the agreement. The evidence does not support this finding. The facts and circumstances of this case strongly indicate there may have been some duress or undue influence. *See Peterson v. Peterson*, 555 N.W.2d 359, 362 (N.D.1996) (as a matter of public policy, a stipulation in a divorce proceeding should be viewed with great skepticism when it occurs rapidly, with the use of one attorney, and under serious threats of harm to one party).

[¶ 28] Heidi Eberle moved out of the parties' home at the end of February 2007. Heidi Eberle testified she only wanted a six-month separation but John Eberle told her if she left they would get a divorce, although John Eberle disputes this. John and Heidi Eberle testified they discussed custody of the children, how much child support John Eberle should pay, and that Heidi Eberle wanted the children to be able to farm the land some day. Heidi Eberle testified she requested $1,500 per month for child support and that she did not discuss with John Eberle how to divide the property. John Eberle testified that he had very few discussions with Heidi Eberle about how to divide their assets and debts, and he did not sit down with Heidi Eberle to list all the property they own and decide how to divide it. There is no evidence the parties discussed how to divide the property. The evidence does not support the court's finding that the agreement contained what Heidi Eberle wanted.

[¶ 29] John Eberle could not recall when he gave Heidi Eberle the agreement but he testified he probably gave her the agreement on Thursday, March 8, 2007, or Friday, March 9, 2007, and he picked it up on the morning of Monday, March 12, 2007. Heidi Eberle was not represented by counsel and there was little opportunity for her to see an attorney before she signed the agreement. A judgment incorporating the agreement was entered March 19, 2007. "A stipulation in a divorce proceeding which occurs rapidly and without the benefit of counsel may be viewed with skepticism." *Kramer*, 2006 ND 64, ¶ 12, 711 N.W.2d 164. The agreement was rushed, there was very little discussion between the parties on what the agreement should contain, the parties did not discuss how to divide the property, and Heidi Eberle was not represented by counsel.

[¶ 30] Heidi Eberle's background and circumstances also placed her at a disadvantage in the negotiating process and made her more susceptible to overreaching and oppressive conduct. Heidi Eberle was unemployed at the time she moved out of the residence and she had not been employed outside the home for most of the marriage. When she moved out of the parties' residence she took the four children, very few material possessions, and $5,000, although half of the money was later returned to pay off credit card debt. John Eberle agreed to pay $1,200 per month in child support, which the agreement states is more than the child support guidelines would have required, and there was evidence Heidi Eberle needed this money to support herself and the children. Heidi Eberle also testified she wanted custody of the children and John Eberle told her that she had to sign the agreement or he would fight her for custody of the children and take all the property. The involvement of children and the relationship of the parties as husband and wife make this type of case different from normal civil actions because the emotions and fears of the parties are increased. *See In re Marriage of Gonzalez*, 57 Cal.App.3d 736, 129 Cal. Rptr. 566, 572–73 (1976).

[¶ 31] While Heidi Eberle's delay in moving for relief from judgment is a factor to consider, it does not prohibit her motion. *See Peterson,* 555 N.W.2d at 361 (wife retained an attorney and filed a motion to vacate the judgment under N.D.R.Civ.P. 60(b) almost one year after the judgment was entered).

[¶ 32] Under the facts of this case, there are strong indications the agreement was not free from duress and undue influence, Heidi Eberle was not represented by counsel, the agreement was rushed, and there was very little discussion between the parties about the terms of the agreement. Although there is evidence to support the court's findings about fraud and the findings support the court's conclusion the agreement was free from mistake, menace, or fraud, we conclude the agreement was procedurally unconscionable.

B

[¶ 33] Substantive unconscionability focuses on the terms of the agreement and their harshness or whether the terms are one-sided. *Strand,* 2005 ND 68, ¶ 20, 693 N.W.2d 918. Here, the gross disparity in the terms of the agreement are a significant factor in determining whether the agreement is unconscionable. *See Derby,* 378 S.E.2d at 79 ("gross disparity in the value exchanged is a significant factor in determining whether oppressive influences affected the agreement to the extent the process was unfair and the terms of the resultant agreement unconscionable.").

[¶ 34] John Eberle has an adjusted gross annual income of approximately $30,000 to $40,000 from farming. Heidi Eberle was not employed at the time of the divorce, and had not been employed outside the home for most of the marriage. The district court found the farm land is worth between $800,000 and $1,065,000.

The court found the farming operation had approximately $236,000 in debt and the farm and financial assets were worth approximately $325,145 at the time of the divorce. The parties had been married for more than ten years, and there were substantial assets in the marital estate.

[¶ 35] Under the agreement, John Eberle received a pickup truck, all of the farm equipment, machinery, tools, and other items associated with the farming operation, his checking account, the household goods and furnishings remaining in the marital residence, and all real property including the farmland and marital residence. Heidi Eberle received primary physical custody of the children, $1,200 per month in child support, any property she took with her when she left, a minivan, her new checking account which included the $2,500 she took when she moved out, and any clothing or close personal effects still remaining at the marital residence. Heidi Eberle did not receive any spousal support or assets other than the small amount of furniture she took when she moved out of the marital residence, her clothing, the minivan, and $2,500. Nothing in the agreement required the children to inherit the land as John Eberle claims Heidi Eberle wanted and the agreement states it contains all of the terms and conditions of the contract between the parties. While John Eberle did agree to pay a higher amount of child support than it appears he would have been required to pay under the child support guidelines, child support may be modified. Also, the oldest child is sixteen years old and the agreement provides that John Eberle will be entitled to a recalculation of his support obligation when the child graduates from high school or reaches the age of nineteen and is still gainfully enrolled in school. The increased child support alone does not make the agreement conscionable.

[¶ 36] The terms of the agreement were so one-sided no rational, undeluded person would make this agreement, and no honest and fair person would accept it. The agreement is substantively unconscionable.

[¶ 37] We conclude the settlement agreement is procedurally and substantively unconscionable and the district court abused its discretion in denying Heidi Eberle's motion for relief from judgment. We reverse and remand for an equitable division of the marital estate.

## IV

[¶ 38] Heidi Eberle argues the district court abused its discretion when it denied her request for attorney's fees because the court found she was attempting to obtain relief from the judgment and N.D.C.C. § 14–05–23 should not apply.

[¶ 39] In divorce proceedings the court may order payment of attorney's fees under N.D.C.C. § 14–05–23. A court's decision whether to award attorney's fees is within the court's discretion and will not be reversed on appeal unless the court abuses its discretion. *Ulsaker v. White*, 2009 ND 18, ¶ 23, 760 N.W.2d 82. In deciding whether to award attorney's fees, the court should balance one party's needs against the other party's ability to pay. *Id.*

[¶ 40] Although the district court did state N.D.C.C. § 14–05–23 should not apply in this case because Heidi Eberle was attempting to obtain relief from the judgment, the court also found Heidi Eberle's need did not justify an award of attorney's fees. We conclude the district court did not abuse its discretion in denying Heidi Eberle's motion. The district court may revisit this issue on remand.

## V

[¶ 41] Heidi Eberle contends the district court abused its discretion by denying her motion to compel John Eberle to comply with N.D.R.Ct. 8.3. She claims she was forced to incur additional costs and expenses because John Eberle refused to comply with the rule.

[¶ 42] Rule 8.3(a), N.D.R.Ct., requires parties in a divorce case to prepare a joint informational statement and a preliminary property and debt listing. Although the parties did not comply with N.D.R.Ct. 8.3 within 30 days, both parties did file an informational statement and property and debt listing as the rule requires and the district court found the parties complied with the rule. Furthermore, Heidi Eberle did not state what relief she is requesting for any prejudice she may have suffered as a result of John Eberle's delayed compliance.

## VI

[¶ 43] We affirm the district court's orders denying Heidi Eberle's request for attorney's fees and her motion to compel compliance with N.D.R.Ct. 8.3. We conclude the settlement agreement is unconscionable and the district court abused its discretion in denying Heidi Eberle's motion for relief from judgment. We reverse the order denying relief from the judgment and remand for an equitable division of the marital estate.

[¶ 44] CAROL RONNING KAPSNER and MARY MUEHLEN MARING, JJ., concur.

DANIEL J. CROTHERS, J.

I concur in the result.

SANDSTROM, Justice, dissenting.

[¶ 45] Because I would affirm the judgment of the district court, I respectfully

dissent from the portion of the majority opinion that reverses and remands.

[¶ 46] Findings of fact are not to be reversed by this Court unless they are clearly erroneous. N.D.R.Civ.P. 52(a) ("Findings of fact, including findings in juvenile matters, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Merely that this Court might have found facts differently does not make findings clearly erroneous. *Wagner v. Wagner*, 2000 ND 132, ¶ 12, 612 N.W.2d 555 ("We will not reverse a trial court's findings merely because we may have viewed the facts differently if we had been the trier of fact."); *Wolf v. Wolf,* 474 N.W.2d 257, 259 (N.D.1991) ("We may have viewed the evidence and weighed those factors differently had we been the trier of fact; but that is not the standard on appeal and we will not reverse a decision of the trial court simply because we would have done differently had we been the trial court.").

[¶ 47] At ¶ 27, the majority says, "However, the court also found Heidi Eberle was not pressured or under duress at the time she signed the agreement. The evidence does not support this finding. The facts and circumstances of this case strongly indicate there may have been some duress or undue influence."

[¶ 48] Although there is contrary evidence, there is extensive evidence to support the district court's findings, including the lengthy delay before the appellant sought relief from the judgment. The district court saw and heard the witnesses. It was the province of the district court to judge credibility, draw inferences, and determine the facts. The majority is inappropriately substituting its judgment for that of the district court.

[¶ 49] Dale V. Sandstrom