# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2021 ND 32

Kristofor John Paulson,                              Plaintiff and Appellee

v.

Shannon Marie Paulson, n/k/a
Shannon Marie Belgarde,                          Defendant and Appellant

### No. 20200163

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable M. Jason McCarthy, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice, in which Justice VandeWalle and Justice Tufte joined, and Chief Justice Jensen and Justice Crothers concurred in the result.

Jessie L. VanCamp, Grand Forks, ND, for plaintiff and appellee.

Jacey L. Johnston (argued), and Olivia A. Jureidini (appeared), Grand Forks, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Shannon Marie Belgarde appeals from an order denying her motion to vacate a divorce judgment, which was entered pursuant to a stipulation. We affirm.

I

[¶2]   Shannon Belgarde (formerly Shannon Paulson) and Kristofor Paulson began dating in 2003, and married in 2013. They divorced on December 4, 2019 based on a stipulated settlement agreement signed by both parties and filed with the district court on November 12, 2019. Neither party was represented by counsel during the drafting or execution of the settlement agreement. According to the settlement agreement, at the time of the divorce, the parties jointly owned two vehicles, a home, and multiple financial accounts. Their debts included an automobile loan of approximately $8,500, a mortgage balance on the marital home of $130,000, and student loan debt of $150,000.

[¶3]   Following the terms of the stipulation, the district court awarded Paulson the marital home, subject to the mortgage, both vehicles, subject to the loan, household goods of $35,000, his retirement and investments accounts, and a substantial amount of funds in checking and savings accounts. Belgarde was awarded $10,000 in household goods, her retirement account, some funds in checking and savings accounts, and was responsible for $150,000 in student loan debt. The property and debt division resulted in a net award to Paulson of $314,510 and a net debt to Belgarde of $105,100.

[¶4]   On January 27, 2020, Belgarde moved to vacate the divorce judgment under N.D.R.Civ.P. 60(b). She argued the judgment should be vacated on the grounds of duress, newly discovered evidence, fraud, misrepresentation, misconduct, and because the divorce stipulation was so one-sided as to be unconscionable. Belgarde argued she relied on Paulson's statements regarding future reconciliation when she signed the settlement agreement. She stated she did not realize these statements were false until she discovered evidence

1

of an alleged affair. Belgarde also argued the divorce stipulation was so one-sided as to be unconscionable. Belgarde submitted affidavits and several exhibits in support of her motion.

[¶5]   Paulson resisted the motion, arguing Belgarde failed to assert grounds justifying relief under N.D.R.Civ.P. 60(b) and the settlement agreement was not unconscionable.   In his affidavit, Paulson denied having an affair, and asserted he entered the marriage with property and no debt, while Belgarde entered the marriage with little property and substantial debt. Neither party requested a hearing on the motion.

[¶6]   Despite no request for a hearing from the parties, the district court held a hearing on the motion. No testimony was offered at the hearing, neither party objected to admission of the parties' affidavits as evidence, and the court took the matter under advisement. Based on the affidavits and exhibits submitted in record, the court found Belgarde was a highly educated person, with capacity to contract, who was free to seek independent legal advice before agreeing to the terms of the divorce stipulation. Further, the court considered Belgarde's arguments and concluded that the facts and circumstances of the case did not rise to the level of fraud, misrepresentation, or misconduct. Finally, the court determined there was insufficient evidence of unconscionability.   The court denied the motion to vacate the divorce judgment on April 14, 2020, and Belgarde appealed.

II

[¶7]   On appeal, Belgarde argues the district court abused its discretion by denying her motion to vacate the divorce judgment because the agreement was the result of mistake, duress, menace, fraud, or undue influence. More specifically, she argues the court did not apply the correct analysis under N.D.R.Civ.P. 60(b)(3) or (6), or for unconscionability. Belgarde also complains the court abused its discretion by not specifically referring to the contents of her exhibits.

2

[¶8] "This Court reviews a district court's denial of a motion to vacate a judgment for an abuse of discretion." *Vann v. Vann*, 2009 ND 118, ¶ 10, 767 N.W.2d 855. In reviewing the district court's denial of a N.D.R.Civ.P. 60(b) motion to set aside a judgment, this Court does not determine whether the court was substantively correct in entering the judgment from which relief is sought. *Terry v. Terry*, 2002 ND 2, ¶ 4, 638 N.W.2d 11. Instead, this Court determines only if the court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not established. *Id.* The district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Knutson v. Knutson,* 2002 ND 29, ¶ 7, 639 N.W.2d 495. An abuse of discretion is never assumed and must be affirmatively established. *Dvorak v. Dvorak*, 329 N.W.2d 868, 870 (N.D. 1983). We will not overturn a district court's decision merely because it is not the one we may have made. *Interest of D.J.H.*, 401 N.W.2d 694, 700 (N.D. 1987). The district court's findings are not disturbed on appeal unless they are clearly erroneous. *Terry*, at ¶ 5; N.D.R.Civ.P. 52(a).

[¶9] The district court may set aside a judgment under N.D.R.Civ.P. 60(b)(3) for fraud, misrepresentation, or misconduct by an opposing party. The court may also set aside a judgment for "any other reason that justifies relief" under N.D.R.Civ.P. 60(b)(6). "Just as courts will not enforce an agreement that is illegal, so too courts should vacate judgments that are unconscionable. Rule 60(b)(vi), N.D.R.Civ.P., is available for just such a rare occasion and exceptional circumstance." *Varty v. Varty*, 2020 ND 165, ¶ 10, 946 N.W.2d 713 (quoting *Crawford v. Crawford*, 524 N.W.2d 833, 836 (N.D. 1994)). Accordingly, we will consider Belgarde's unconscionability and her other arguments under N.D.R.Civ.P. 60(b)(6) together.

[¶10] The divorce judgment in this case was entered based on a stipulation. "This Court encourages peaceful settlements of disputes in divorce matters, and the strong public policy favoring prompt and peaceful resolution of divorce

disputes generates judicial favor of the adoption of a stipulated agreement of the parties." *Knutson*, 2002 ND 29, ¶ 8. A district court ordinarily should not decree a distribution of property that is inconsistent with a voluntary stipulation agreed to by the parties. *Eberle v. Eberle*, 2009 ND 107, ¶ 15, 766 N.W.2d 477. However, a court has a duty to equitably distribute the marital estate, which includes the duty to decide whether an agreement as executed is a result of mistake, duress, fraud, menace, or undue influence. *Id.*

A. Fraud, Misrepresentation, or Misconduct

[¶11] Belgarde argues the divorce judgment should be vacated under N.D.R.Civ.P. 60(b)(3) because Paulson deliberately misrepresented his reasons for the divorce to fraudulently induce her to sign a one-sided agreement favoring his interests. The party seeking relief from a judgment based on fraud has the burden of proof and must establish fraud by clear and convincing evidence. *Dvorak,* 329 N.W.2d 868, 872 (citations omitted). When the judgment sought to be set aside was entered pursuant to a stipulation of the parties, the party challenging the judgment has the additional burden of showing a justification under the law of contracts. *Terry*, 2002 ND 2, ¶ 4. Relief under N.D.R.Civ.P. 60(b)(3) for fraud, misrepresentation, or other misconduct is extraordinary relief that should only be granted in exceptional circumstances. *Id.* "Rule 60(b), N.D.R.Civ.P., is not to be used to relieve a party 'from free, calculated, and deliberate choices he or she has made.'" *Id.* at ¶ 7 (quoting *Fleck v. Fleck*, 337 N.W.2d 786, 791 (N.D. 1983)). A stipulation will not be rescinded on the grounds of mistake or fraud if a party had the opportunity to read the agreement without being misled as to its contents. *Eberle*, 2009 ND 107, ¶ 26.

[¶12] Belgarde argues Paulson promised that there would be reconciliation, that her name would be restored to the home title, and that he would help her when she needed it. Belgarde alleged Paulson repeatedly denied having an affair prior to divorce, but she discovered text messages and call logs between Paulson and another woman after she signed the agreement. Belgarde argues this is evidence of an affair demonstrating that Paulson misrepresented his intentions regarding a future reconciliation with her and his reasons for

wanting a divorce. Paulson argues Belgarde misconstrued his statements as promises, and maintains he did not have an extramarital affair.

[¶13] The district court considered the submissions and arguments of the parties and noted both parties are well-educated adults with advanced degrees, with the full ability and capacity to enter contracts freely. The court noted Belgarde submitted no evidence to suggest she did not understand the finality of a divorce decree. The court concluded there was nothing enforceable about a discussion, or even an agreement, to reconcile in the future. The court stated the risk of relying on such an agreement was apparent and foreseeable at the time she agreed to the stipulation. The court also found Belgarde had time to read and understand the stipulation. Regarding the alleged extramarital affair, the court noted Belgarde suspected Paulson was having an affair prior to signing the settlement agreement, while Paulson has continuously denied the allegation. The court found Belgarde had sufficient suspicion of the conduct for her to factor it as a possibility when reaching a settlement agreement. Therefore, it was not new information unknown to her at the time the parties negotiated their stipulation. The court concluded that Belgarde's "belief that [Paulson] engaged in an extramarital affair does not constitute and would not constitute false pretenses, fraud, newly discovered evidence, duress, misrepresentation, or misconduct by [Paulson], even if [her] allegations were true."

[¶14] We are concerned with the district court's last conclusion. If Paulson made false statements about the alleged affair prior to execution of the settlement agreement, "the suppression of the truth with intent to induce another to enter into a contract is fraud." *Dvorak,* 329 N.W.2d 868, 872 (citation omitted). However, the court here did not find an extramarital affair occurred, likely because the evidence in the record was conflicting and inconclusive. The court concluded that Belgarde's "belief" that Paulson engaged in an extramarital affair did not constitute false pretenses, fraud, newly discovered evidence, misrepresentation, or misconduct. "Generally, no abuse of discretion will be presumed or inferred where there are conflicting affidavits." *Haugo v. Haaland,* 349 N.W.2d 25, 27 (N.D. 1984). The conflicting affidavits in the record here do not provide clear and convincing evidence that

5

an affair occurred; therefore, Belgarde has not met her burden. On this record, we cannot say the court abused its discretion in denying the motion to vacate based on fraud, misrepresentation, or misconduct for the alleged affair or any other alleged misrepresentation.

### B. Duress

[¶15] The district court discussed the arguments made by Belgarde that Paulson took advantage of her mental condition, constituting duress. Belgarde submitted affidavits regarding her mental health issues before and after the divorce. The court noted that Belgarde admitted she did not historically have mental health issues, other than anxiety, prior to the divorce. The court noted the evidence submitted that Belgarde made an attempt on her life after reading the suggestive conversations between Paulson and another woman, demonstrated that she was distressed upon forming a firm belief that Paulson had an affair. However, the court found Belgarde formed this firm belief after signing the stipulation, so it was not evidence of her mental state at the time that she considered and signed it. The court concluded there was no evidence that Belgarde's mental health prevented her from making a free, voluntary, and reasoned decision when she entered into the stipulation. We conclude that the court's findings are supported by the record and are not clearly erroneous. On this record, we cannot say the court abused its discretion in denying the motion to vacate based on the allegations of duress.

### C. Unconscionability

[¶16] Belgarde argues the stipulation agreement should be vacated for unconscionability. "An agreement is unconscionable if it is one no rational, undeluded person would make, and no honest and fair person would accept, or is blatantly one-sided and rankly unfair." *Eberle*, 2009 ND 107, ¶ 18 (citations omitted). While the question of unconscionability is a question of law, the factual findings made by the district court to support the determination are reviewed under a clearly erroneous standard. *Terry*, 2002 ND 2, ¶ 14. A finding of fact is clearly erroneous if it has no support in the record, or even if there is some supporting evidence, the reviewing court is left with a definite and firm

6

conviction a mistake has been made, or the decision was induced by an erroneous view of the law. *Id.*

[¶17] To vacate a divorce judgment as unconscionable, "there must be some showing of both procedural and substantive unconscionability and courts must balance the various factors, viewed in totality, to make its determination." *Eberle,* 2009 ND 107, ¶ 18 (citation omitted). Procedural unconscionability focuses on the formation of the agreement and the fairness of the bargaining process:

> An agreement may be free from mistake, duress, menace, fraud, or undue influence and still be procedurally unconscionable. While there may not be mistake, duress, menace, fraud, or undue influence, one party may be guilty of such oppressive conduct to secure the agreement that the agreement should not be enforced. *See Derby v. Derby*, 8 Va. App. 19, 378 S.E.2d 74, 79 (1989). Settlement agreements in divorce cases are more susceptible to overreaching and oppressive conduct because of the relationship between the husband and wife, particularly when the negotiations are between the parties rather than through their lawyers. *Id.* Behavior that may not constitute fraud, duress, mistake, menace, or undue influence in an arms length context may be sufficient to make an agreement unconscionable when the relationship is used to take advantage of a situation and achieve an oppressive result. *Id.*

*Eberle*, at ¶ 20. Substantive unconscionability focuses on the one-sidedness of the agreement. *Id.* at 18.

[¶18] Belgarde argues the stipulation was procedurally unconscionable because it was the result of an unfair bargaining process. Specifically, she argues Paulson's assurances of a future reconciliation rendered the bargaining process unfair. Belgarde also asserts the rushed timeframe between Paulson requesting a divorce near the end of October 2019, Paulson drafting the documents on November 9, 2019, and filing the documents on November 12, 2019 evidences procedural unconscionability. She argues that Paulson assured her that attorneys were not necessary and she should not discuss the divorce with anyone until it was over.

7

[¶19] Paulson argues Belgarde's claims do not show procedural unconscionability. He disputed her factual allegations in his affidavit about the preparation of the divorce documents, asserting that the documents were prepared by both parties, and that it was Belgarde who located the notary public to notarize their signatures. He further argues Belgarde had time to seek an attorney and he did not discourage her from seeking counsel.

[¶20] This Court has cautioned, as a matter of public policy, a stipulation in a divorce proceeding should be viewed with great skepticism when it occurs rapidly, with the use of one attorney, and under serious threats of harm to one party. *Eberle,* 2009 ND 107, ¶ 27 (relying on *Peterson v. Peterson*, 555 N.W.2d 359, 362 (N.D. 1996)). In *Eberle,* despite concluding that the district court did not err in finding a marital agreement was free from mistake, duress, fraud or undue influence, this Court reversed a denial of a motion to vacate a divorce judgment, holding the facts of the case showed the marital agreement was procedurally unconscionable. *Id.* at ¶ 32 (holding an agreement procedurally unconscionable where one party was not represented by counsel, the agreement was rushed, and there was very little discussion between the parties about the terms of the agreement). In *Eberle*, one party hired an attorney who drafted the settlement agreement. *Id.* at ¶ 4. The agreement was signed only a few days later by the other party, who was not represented by counsel. *Id.* The parties in *Eberle* filed affidavits and testified about the process the parties followed in reaching the terms of the settlement agreement. *Id.* at ¶¶ 22-25.

[¶21] Here, the parties did not testify or request an opportunity to testify or cross-examine, so the district court had little or no opportunity to weigh the credibility of the parties. Rather, the parties filed conflicting affidavits regarding the procedural steps the parties took prior to the divorce. Unlike *Eberle,* it is undisputed that neither of the parties here were represented by counsel. The court found that Belgarde had time to seek counsel and understand the permanence of a divorce prior to executing the stipulation. While the short time frames here are concerning, we cannot say as a matter of law that the court's finding is clearly erroneous. The court found that because neither party was represented by counsel, neither party had a clear advantage

8

over the other in the crafting of the stipulation. The court found both parties were highly educated and capable of understanding the agreement they were entering into. The court also noted Belgarde moved to vacate the judgment only upon discovering evidence of an alleged affair, finding the timing indicated she was motivated by a desire for retribution, rather than a realization the agreement was inequitable. These findings are not clearly erroneous, and are supported by the record. The court did not abuse its discretion by concluding Belgarde failed to establish procedural unconscionability. Although we affirm the court, there was some showing of possible procedural unconscionability in regard to the short time frame involved in drafting the settlement agreement. We therefore will review for substantive unconscionability, considering the totality of the circumstances.

[¶22] Belgarde also argues the stipulation is substantively unconscionable. She argues the property division, on its face, shows the judgment was unconscionable. She further argues there was not sufficient evidence for the court to make a conclusory decision concerning the marital equity.

[¶23] The terms of the settlement agreement here appear disparate, which is a significant factor to consider in determining whether the agreement is unconscionable. *See Eberle,* 2009 ND 107, ¶ 33. However, whether the disparity is equitable must be considered under the facts of the case. The *Ruff-Fischer* guidelines are not the standard used to determine unconscionability of a property settlement in a divorce, but they may be considered. *Vann,* 2009 ND 118, ¶ 25. Under the *Ruff-Fischer* guidelines the court considers:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* (citations omitted).

9

[¶24] The length of a marriage is a factor a district court must consider in determining the equitable division of the marital estate under the *Ruff-Fischer* guidelines. *Lill v. Lill*, 520 N.W.2d 855, 857 (N.D. 1994). There is no bright-line rule to distinguish between short and long-term marriages. *Hitz v. Hitz*, 2008 ND 58, ¶ 16, 746 N.W.2d 732. Generally, a long-term marriage supports an equal division of marital assets, but the division need not be equal to be equitable. *Bladow v. Bladow*, 2003 ND 123, ¶ 8, 665 N.W.2d 724. In a short-term marriage, the district court may distribute property based on what each party brought into the marriage. *Lill*, at 857.

[¶25] The district court found that the Paulsons had a short-term marriage. Belgarde and Paulson were married for six years, and cohabited for a decade prior to marriage. A court may, but is not required to, consider a period of cohabitation when calculating the length of a marriage. *Schultz v. Schultz*, 2018 ND 259, ¶ 13, 920 N.W.2d 483. Belgarde provided no evidence to the court of the parties' financial practices during the period of cohabitation, which may have supported a finding cohabitation should be considered in calculating the length of the marriage. The determination that the Paulsons had a short-term marriage is not clearly erroneous.

[¶26] The source of the property is also a factor a district court should consider in determining the equitable distribution of a marital estate under the *Ruff-Fischer* guidelines. *Lill*, 520 N.W.2d 855, 857. The court considered this factor, finding Belgarde entered the marriage with substantial student loan debt and little to no assets. In contrast, the court found much of the marital estate was either brought into the marriage by Paulson or contributed by his parents. The court considered numerous factors and found in part:

> Their positions when entering the marriage were vastly different, [Paulson] having no debt and having already accumulated assets. [Belgarde] had substantial student loan debt, and little to no assets. This was a short term marriage. Both parties are young and able bodied. Both have advanced degrees, and the same advanced degrees at that, giving them similar to identical earning capacities. While [Paulson] earns more annually at this time, he also works two jobs, and [Belgarde] holds a position considered to

10

be a "public interest" position, qualifying her for forgiveness of her student loans in a year and a half. This is in kind income of great value. Much of the parties' marital estate was either brought into the marriage by [Paulson] or contributed by [his] parents.

[¶27] The district court found the stipulation appeared to be guided by the parties' mutual belief that they each owned certain assets and were responsible for certain debts, and concluded the stipulation was not substantively unconscionable in a short-term marriage. The court's findings are based on the affidavits submitted by the parties. Based on the record, the court's findings are not clearly erroneous. While on its face the divorce judgment appears disparate, it is not arbitrary, unreasonable, or unconscionable to award a party the debt that they incurred. We conclude the court did not abuse its discretion in denying Belgarde's motion to vacate the judgment based on unconscionability.

[¶28] "Rule 60(b) attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done, and, accordingly, the rule should be invoked only when extraordinary circumstances are present." *Knutson*, 2002 ND 29, ¶ 7 (relying on *Kopp v. Kopp*, 2001 ND 41, ¶ 9, 622 N.W.2d 726). *See also Hildebrand v. Stolz*, 2016 ND 225, ¶ 16, 888 N.W.2d 197; *Watne v. Watne*, 391 N.W.2d 636, 639 (N.D. 1986). Despite Belgarde's N.D.R.Civ.P. 60(b) arguments, she has not argued or demonstrated why the facts of this case present extraordinary circumstances justifying relief. We conclude there are no extraordinary circumstances present justifying relief from the judgment.

III

[¶29] We have considered the remainder of Belgarde's arguments and conclude they are either unnecessary to our decision or are without merit.

[¶30] We affirm the district court's order denying Belgarde's motion to vacate the divorce judgment.

[¶31] Gerald W. VandeWalle

Lisa Fair McEvers

Jerod E. Tufte

I concur in the result.

Jon J. Jensen, C.J.

Daniel J. Crothers