2006 ND 163

**Lynette D. MOLITOR, Plaintiff and Appellee**

v.

**Kenneth M. MOLITOR, Defendant and Appellant.**

**No. 20040041.**

Supreme Court of North Dakota.

July 18, 2006.

Theresa L. Cole of American Legal Services, Bismarck, N.D., for defendant and appellant.

Gary D. Ramsey of Greenwood & Ramsey, P.L.L.P., Dickinson, N.D., for plaintiff and appellee.

MARING, Justice.

[¶ 1] Kenneth M. Molitor appeals from an amended judgment, establishing custody of the parties' two children and an order denying his motion for a change of custody. We affirm.

I

[¶ 2] Kenneth Molitor and Lynette Molitor, now known as Lynette Hewson, were divorced on September 29, 2002, following entry of a partial judgment on the issue of divorce only. Sole custody of the parties' two minor children was awarded to Hewson by judgment on October 20, 2003. An amended judgment was entered the next day and a second amended judgment was entered on December 10, 2003. Custody of the two children was not altered in either of the amended judgments. On January 30, 2004, Molitor filed a notice of appeal with this Court.

[¶ 3] On April 20, 2004, while Molitor's appeal was pending, social services removed the parties' two children, along with the two children of Hewson's new husband, from her and her husband's home. The removal of the children followed an incident in which Hewson had discovered her oldest child and her new husband's two children "huffing" gasoline in the basement of her house. An argument ensued between Hewson and the three children, during which time the mother of Hewson's husband's children called, overheard the argument, and called law enforcement. After investigation by social services, the parties' youngest child was returned to Hewson's custody.

[¶ 4] On April 23, 2004, as a result of the removal of the children from Hewson's home, Molitor moved for an ex parte order stating he believed it was necessary to protect the children from a threat of immi-

nent danger. The trial court noted that it did not believe it had jurisdiction over the matter because of the pending appeal. On July 23, 2004, Molitor moved to amend the judgment to change custody. On October 7, 2004, Molitor moved this Court to remand for the limited purpose of permitting the trial court to consider his motion for change of custody. This Court granted the motion on October 21, 2004, and a hearing was held before the trial court on July 20, 21, and 28, 2005. Following the hearing, the trial court denied Molitor's motion. Molitor appealed the order. Since this case began, one of the two children at issue has reached the age of majority.

## II

[¶ 5] On appeal, Molitor argues the trial court's award of custody to Hewson was clearly erroneous. He also argues the trial court's failure to change custody was clearly erroneous.

## A

[¶ 6] In making an initial custody determination, a trial court must decide which custody arrangement would be in the best interest of the child by applying the factors listed at N.D.C.C. § 14–09–06.2(1). *Shaw v. Shaw*, 2002 ND 114, ¶ 5, 646 N.W.2d 693. In our review of a trial court's application of the best interest factors, we do not require a separate finding for each factor. *Id.* However, the trial court's findings of fact should be stated with sufficient specificity to enable us to understand the factual basis for the court's decision. *Id.* On review, a trial court's opportunity to observe the witnesses and determine credibility should be given great deference. *Hanson v. Hanson*, 2003 ND 20, ¶ 11, 656 N.W.2d 656. A trial court's custody determination is a finding of fact that will not be set aside on appeal unless it is clearly erroneous. *Shaw*, 2002 ND 114, ¶ 5, 646 N.W.2d 693. The complaining party bears the burden of showing that a trial court's custody determination was clearly erroneous. *L.C.V. v. D.E.G.*, 2005 ND 180, ¶ 3, 705 N.W.2d 257. "A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) only if it is induced by an erroneous view of the law, there is no evidence to support it, or, though some evidence supports it, on the entire record we are left with a definite and firm conviction a mistake has been made." *Shaw*, at ¶ 5.

[¶ 7] Under N.D.C.C. § 14–09–06.2, the best interest factors to be applied in child custody determination cases are:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, under-

standing, and experience to express a preference.

j. Evidence of domestic violence . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

[¶ 8] In making its findings of fact for the initial custody determination, the trial court did not make a separate finding on each individual factor. Nevertheless, the factual basis for the trial court's decision is quite clear. The trial court found that Molitor's mistreatment of his sheep is indicative of his avoidance of any kind of gainful employment adequate to support his family's needs. The trial court found Hewson was the primary provider for the family while the parties were married. The trial court discussed evidence presented at trial regarding Molitor's lack of insight into the role of a parent and instances when Molitor spoke negatively about Hewson in front of the children. The trial court found Molitor's disciplinary practices with the children foster disrespect for the law and authority. The trial court found Molitor lacks maturity and interacts with his children as a "pal" rather than providing an adult role model. The trial court found Molitor has anger control issues and is self-centered. We can infer from these findings that the trial court concluded Molitor does not have the capacity to give the children the parental guidance needed. These findings indicate the application of, at a minimum, factors (b), (c), (f), and (g) by the trial court against awarding custody to Molitor. We believe these findings are sufficient to provide us with an understanding of the trial court's decision on custody.

[¶ 9] In his brief on appeal from the initial custody determination, Molitor invites us to reexamine the record in bits and pieces favorable to his case. Under our standard of review, however, we look to whether there is evidence to support the trial court's decision. There is clearly evidence on the record which supports this decision.

[¶ 10] Our standard of review also allows us to reverse if our review of the entire record leaves us with a definite and firm conviction a mistake has been made. Our standard of review does not allow us to reverse the trial court merely because of the possibility we may have decided a case differently. As we have said, when dealing with findings of fact:

"[R]eading a cold transcript is no substitute for hearing and observing witnesses as they testify. Tones of voice, hesitations, confusion, surprise, and other telltale indications of mental state convey to trial judges and jurors much that is lost to appellate judges. If we were to judge from the cold print, we might decide many cases differently than trial judges do, and this case might be one of them. But, if we decided differently, we would have no assurance that ours was the better decision."

*City of Jamestown v. Neumiller*, 2000 ND 11, ¶ 12, 604 N.W.2d 441 (quoting *State v. Tininenko*, 371 N.W.2d 762, 764–65 (N.D.

1985)). Our standard requires a definite and firm conviction a mistake has been made. We have no such conviction in this case.

■ [¶ 11] At oral argument, Molitor argued the trial court's decision in making its initial custody determination revealed bias against him, and that we should reverse as a result. However, in Molitor's brief appealing the initial custody determination, he states only: "Rather than engaging in the required analysis as mandated by N.D.C.C. 14–09–06.2, the District Court took the opportunity to display its personal anger towards [Molitor] and as a result disparage [Molitor] in every personal manner feasible." Never does Molitor argue the trial court was biased towards him such that it affected the outcome of the custody determination. This Court is not in the business of divining what a party meant to argue in its brief. Nor do we raise and address issues not adequately briefed. Issues on appeal should be fully briefed with appropriate supporting citations and with fair and adequate opportunity for a response from the opposing party. *Roise v. Kurtz*, 1998 ND 228, ¶ 10, 587 N.W.2d 573. The issue raised in Molitor's brief was whether the trial court correctly applied the law to the facts. The issue of bias was not properly raised. Molitor cites one decision in his brief, *Severson v. Hansen*, 529 N.W.2d 167 (N.D.1995), for the proposition that the trial court must consider the best interest factors. In his brief, Molitor basically argues the trial court's findings are not specific enough and that the evidence favorable to him on each factor supported awarding custody to him. Molitor requests that our Court reweigh the evidence and grant him custody.

■ [¶ 12] Although we understand judges do become frustrated with parties in family law cases, we agree that the trial court's rhetoric reflects poorly on the court and such behavior can have a negative impact on the public's trust and confidence in our judicial system. The trial court's choice of words in its findings is unnecessarily derogatory and stinging. We do not condone the use of one's judicial position to launch a vehement attack on a party. However, when this case was remanded for consideration of Molitor's motion to change custody, Molitor neither made a motion for change of judge nor raised, in any fashion, the issue of his inability to get a fair hearing before the trial court. *See* N.D.C.C. § 29–15–21(3). "We have repeatedly held that issues not raised in the trial court cannot be raised for the first time on appeal. The failure to raise the issue of judicial bias in the trial court precludes our review on appeal." *Wenzel v. Wenzel*, 469 N.W.2d 156, 158 (N.D.1991).

B

■ [¶ 13] The original order granting custody was filed on October 20, 2003. Molitor's motion to change custody was filed on July 23, 2004. Section 14–09–06.6(5), N.D.C.C., governs change of custody proceedings in situations where less than two years has passed since the initial order establishing custody. The section provides:

> The court may not modify a prior custody order within the two-year period following the date of entry of an order establishing custody unless the court finds the modification is necessary to serve the best interest of the child and:
>
> a. The persistent and willful denial or interference with visitation;
>
> b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or
>
> c. The primary physical care of the child has changed to the other parent for longer than six months.

N.D.C.C. § 14–09–06.6(5). That provision "was enacted to provide something of a moratorium for the family during the two-year period following a custody determination. The purpose of this moratorium is to spare children the painful, disruptive, and destabilizing effects of repeat custody litigation." *Wagaman v. Burke*, 2002 ND 51, ¶ 5, 642 N.W.2d 178 (citations omitted). We have also said that when a party seeking modification of custody does not allege any of the grounds listed under N.D.C.C. § 14–09–06.6(5) as a basis for modification, the trial court does not err in denying a motion to change custody. *See Wagaman*, ¶ 11.

[¶ 14] In this case, Molitor never cites to N.D.C.C. § 14–09–06.6(5). His briefing to this Court indicates he believed a change of custody is governed by applying the best interest factors. In his brief to the trial court in support of his motion to change custody, Molitor cites to no law governing change of custody and only asserts: "Given the serious events that have occurred, a modification of the custody order would be in the best interests of the children." In her briefing, Hewson contends Molitor had "not stated grounds constituting change of circumstances," indicating that she believed the standard for modification found at N.D.C.C. § 14–09–06.6(6) applied. *See* N.D.C.C. § 14–09–06.6(6) (governing modification of custody after two years have passed since the initial finding of custody). The trial court never indicates which standard it applied. Instead, it simply applied the best interest factors.

[¶ 15] There is no finding by the trial court that would indicate Molitor made a case for change of custody under N.D.C.C. § 14–09–06.6(5). By Molitor's own admission in his briefing, there was not denial of visitation. Molitor's only complaint as to visitation is that Hewson "rarely allows [Molitor] more visitation than his scheduled 4 days a month." The trial court states Hewson allows Molitor "reasonable visitation." The facts also do not support that there has been a change in primary physical care for the child for more than six months. Molitor's only argument under N.D.C.C. § 14–09–06.6(5) is that "the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." *See* N.D.C.C. § 14–09–06.6(5)(b).

[¶ 16] Although it appears the trial court did not apply the correct provision, the court's findings clearly show that Molitor did not prove a case for modification of custody under N.D.C.C. § 14–09–06.6(5)(b). In considering Molitor's motion to change custody following a three-day evidentiary hearing on the matter, the trial court made specific findings of fact as to, at least, factors (a), (b), (c), (d), (e), (f), (g), (h), and (k) and arguably (*l*) and (m) of the best interest factors. The trial court specifically found "[t]he child has lived in a stable satisfactory environment and continuity should be maintained" and "[t]he child has been in his mother's custody his whole life except for the three weeks that he was removed by social services and placed with his father." In regards specifically to the April 2004 incident that led to the removal of the youngest child from the Hewson home, the trial court makes clear that it does not believe the youngest child was in danger in Hewson's home and that it was the behavior of the other sibling and step-siblings in the home that was the source of that incident. Quite simply, our review of the record and of the trial court's findings of fact indicate the trial court did not err in concluding that Molitor did not establish a case for change of custody. On this record, there is nothing that leaves us with a firm conviction a mistake has been made in the outcome. Again, Molitor se-

lectively points to facts in the record to support his argument that modification is necessary, but we are unpersuaded the trial court erred. A case for modification of custody was not established under either the legal standard in N.D.C.C. § 14–09–06.6(5)(b) or in N.D.C.C. § 14–09–06.6(6). It must be noted that N.D.C.C. § 14–09–06.6(6) is a more lenient standard and even if the trial court applied it instead of the more strict standard under N.D.C.C. § 14–09–06.6(5), Molitor failed to prove his case. Application of the more lenient provision and the assumption the April 2004 incident was a change in circumstances actually benefitted Molitor.

[¶ 17] Although the trial court did not apply the correct provision under N.D.C.C. § 14–09–06.6, we believe the correct result was reached and that the result is supported, under the appropriate law, by the trial court's findings of fact and the record. Had the trial court applied N.D.C.C. § 14–09–06.6(5), the issue would have been whether the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development. The trial court made findings that clearly infer the environment at Hewson's home did none of these things. Under N.D.C.C. § 14–09–06.6(5), that finding ends the inquiry. The movant has failed to establish any of the three grounds on which to bring a motion within two years of the last custody order. When, as in this case, the outcome would be the same applying the correct provision, and the outcome that was reached was based on findings that are not clearly erroneous, we see little need to require that the parties continue to litigate merely to ensure the trial court is held to task.

[¶ 18] We also consider Molitor's contention at oral argument that the trial court's statements indicated bias against him when making its decision on his mo-

tion. After review of the record and Molitor's briefing, we do not see where Molitor raised, prior to oral argument, the issue of bias by the trial court. Again Molitor cites to us no case law on the issue of bias. Although Molitor points us to places in the trial court's order which again exhibit rhetoric which reflects poorly on the trial court, we do not see where in his briefing he has indicated to us that he wishes to raise that issue or where he placed Hewson on notice that he is raising the issue of bias.

III

[¶ 19] The trial court's amended judgment awarding custody and order denying change of custody are affirmed.

[¶ 20] GERALD W. VANDE WALLE, C.J., concur.

DANIEL J. CROTHERS, J., concurs in the result.

KAPSNER, Justice, dissenting.

[¶ 21] Custody decisions are difficult. In reviewing custody disputes, our duty is to ensure district court judges have followed the legislative command of weighing the best interests of the child factors under N.D.C.C. § 14–09–06.2. When a trial judge ignores the legislatively imposed best interest factors, writes perfunctory findings that rely on evidence not in the record, or when we cannot determine the basis for a trial court's decision, we will reverse and send a case back for further analysis and more detailed findings. *See, e.g., Clark v. Clark,* 2005 ND 176, ¶ 9, 704 N.W.2d 847; *N.D. Human Rights Coalition v. Bertsch,* 2005 ND 98, ¶ 15, 697 N.W.2d 1; *Huntress v. Griffey,* 2002 ND 160, ¶ 8, 652 N.W.2d 351. When a judge evidences bias by using his position as a district court judge to ridicule the parents and children, that judge brings disrespect

to the judiciary and destroys public confidence in our justice system. *See, e.g., Sisk v. Sisk*, 2006 ND 55, ¶ 43, 711 N.W.2d 203 (dissenting opinion). The majority is willing to make many inferences to save this decision. I believe it is impermissible to do so under the circumstances. I therefore respectfully dissent.

[¶ 22] When making an initial custody determination, a trial court has a duty to serve the best interests of the child. *DesLauriers v. DesLauriers*, 2002 ND 66, ¶ 5, 642 N.W.2d 892. A court must weigh the best interests of the child factors set forth under N.D.C.C. § 14–09–06.2 when making such a decision. *Id.* A trial court's findings on the factors for the best interests of the child under N.D.C.C. § 14–09–06.2 should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for a trial court's decision. *Huntress v. Griffey*, 2002 ND 160, ¶ 8, 652 N.W.2d 351.

[¶ 23] Here, the trial court did not review the best interest factors when the court made the initial custody decision. The majority argues it is "quite clear" the best interest factors were considered based on the words used by the district court and evidence within the record. Majority opinion at ¶ 8. I have trouble discerning the same level of clarity. Molitor's brief states: "Rather than engaging in the required analysis as mandated by N.D.C.C. 14–09–06.2, the District Court took the opportunity to display its personal anger towards [Molitor] and as a result disparage [Molitor] in every personal manner feasible." Majority opinion at ¶ 11. From the record we have before us, this appears to be an accurate description. At the conclusion of the initial custody hearing, the court made "Special Findings." The court made findings chastising Molitor for an incident regarding his sheep farm and a case occurring fifteen years prior to the hearing. The court's first finding stated:

> 1) Fifteen years ago, when I went to Amidon to hear the case of the defendant's cattle grazing in his neighbors' wheat fields in a desperate attempt to save their own lives, it was apparent that the defendant was running a concentration camp for livestock. Now, fifteen years later the defendant is still starving his sheep. It's a mystery that the people of Slope County tolerate it.

The majority infers from this finding—or more accurately makes its own finding—that Molitor's mistreatment of sheep is indicative of his avoidance of gainful employment. Majority opinion at ¶ 8.

[¶ 24] A trial court has an obligation to make findings of fact under N.D.R.Civ.P. 52(a). As an appellate court of review, we do not make independent findings. By scouring the record for sufficient information to support a court's decision, we are acting as a fact-finder. When a district court provides no indication of the evidentiary and theoretical basis for its decision, the reviewing court is left to speculate whether factors were properly considered and the law was properly applied. *Clark v. Clark*, 2005 ND 176, ¶ 9, 704 N.W.2d 847. We cannot perform our appellate court function under such circumstances. *Id.*

[¶ 25] The court's second special finding is based on an apparent sexist assumption that men cannot raise a family and that women should not have to work outside the home:

> 2) For about twenty years as nearly as I can tell, the defendant has managed to avoid any kind of gainful employment and he would have starved his own family just like his livestock if his wife had not gone out and worked outside of the home to put food on the table.

[¶ 26] The majority infers negative findings under N.D.C.C. § 14–09–06.2(b), (c), and (g), but this trial court on remand found the exact opposite. The court found under factor (b): that Molitor has the "capacity and disposition to give the child love, affection and guidance and to continue the education of the child." Under factor (c), the court determined that Molitor has the "capacity to provide for the material needs of the child." With factor (g), the court found that Molitor is a "physically fit" parent. These findings appear almost directly contradictory to the court's other findings, but since the court made the findings, I would be unwilling to make contrary inferences on appeal.

[¶ 27] In addition to contradictory findings, as the majority acknowledges, the judge does not apply the correct law to a motion to change custody. Again, the majority is willing to make an inference to affirm the lack of analysis. On the change of custody motion, the court erroneously applies the best interest factors without ever making a finding that a material change of circumstances has occurred. The district court should have applied the best interest factors during the initial custody determination.

[¶ 28] The same kind of intemperate language used to describe the father is displayed toward the older child whose custody is no longer in question. Describing that child and two of Hewson's stepchildren, the judge says that Hewson and her new husband were "providing a home to three drug-abusing juvenile terrorists only they didn't know it." Such language leaves me no assurance that this decision is based upon anything more than the judge's anger. The final decision might very well be the correct result, but this record does not demonstrate that the trial judge applied the law to get there. I would reverse and remand for further findings.

[¶ 29]DALE V. SANDSTROM, J., agrees.