2009 ND 118

**Gretchen W. VANN, Plaintiff and Appellee**

v.

**James P. VANN, Defendant and Appellant.**

**No. 20080344.**

Supreme Court of North Dakota.

July 9, 2009.

Janel B. Fredericksen, Smith, Strege & Fredericksen, Ltd., Wahpeton, N.D., for plaintiff and appellee.

Mark A. Meyer, Meyer Law Firm, Wahpeton, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] James P. Vann appeals from a district court's order denying his motion to vacate the divorce judgment and a district court's order denying his motion to amend the pleadings and for a new trial. We affirm, holding the district court did not abuse its discretion in denying James Vann's request to vacate the divorce judgment, did not err in denying James Vann's alternative motion to enforce the property settlement agreement, and did not abuse its discretion in denying James Vann's motion to amend the pleadings and for a new trial.

I

[¶ 2] Gretchen W. Vann and James P. Vann were married in 1999. At the time of the marriage, Gretchen Vann was forty-five years of age, had approximately $2.5 million, and did not have any debt. James Vann was forty-four years of age, was earning approximately $80,000 per year at his job, had an interest in his father's $350,000 home in Oregon, had a 401k worth $8,000, and did not have any debt. After the marriage, James Vann quit his job. The parties dispute the reason James Vann quit his job. James Vann contends he and Gretchen Vann agreed he should quit so they could travel and live a life of luxury together. Gretchen Vann contends James Vann did not like his job, quit on his own volition, and she helped him start a gun business by using her assets to start and sustain the business.

[¶ 3] The parties lived in James Vann's father's home for part of their marriage. Gretchen Vann claims she used $300,000 of her assets to complete an extensive remodeling of the home. The parties agree that James Vann struggled with an alcohol addiction for most of the marriage. Gretchen Vann testified she paid at least $10,000 for James Vann's treatment, his drinking negatively impacted her relationship with her adult children, she had to clean up after his daily drinking binges, and his alcoholism was the primary reason for the divorce. She testified her grandchildren were not allowed to visit her when she was living with James Vann because he drove his vehicle into the ditch with her grandson in the car after he had been drinking alcohol.

[¶ 4] Both Gretchen Vann and James Vann testified that James Vann did not contribute or pay for anything during the marriage, with the exception of contributing his interest in the Oregon home. Gretchen Vann testified she moved to Forman, North Dakota, in 2004 and separated from James Vann. James Vann subsequently moved to North Dakota. Gretchen Vann purchased land and built a general store in Rutland, North Dakota. James Vann testified the store cost $900,000; Gretchen Vann testified it cost nearly $1,000,000. Gretchen Vann testified the store was only worth $250,000 at the time of the hearing because of its location. Gretchen Vann works in the store full time, has several employees, and lives above the store.

[¶ 5] Gretchen Vann testified her attorney drafted a property settlement agreement and a copy of the proposed agreement was given to James Vann to review in January or February 2007. Gretchen Vann testified she waited until March 9, 2007, when she knew James Vann had been sober for three days, and then she and James Vann went to the Sargent County Courthouse and signed the agreement. Gretchen Vann testified that just before James Vann signed the property settlement agreement, she asked him if he had read it. He told her he had not. Gretchen Vann testified she then told him to read it, but he said he did not care and signed it anyway. The Sargent County Clerk of Court notarized their signatures.

[¶ 6] On March 20, 2007, the district court entered a divorce judgment incorporating the property settlement agreement. On March 4, 2008, James Vann moved to vacate the divorce judgment under N.D.R.Civ.P. 60(b), alleging the agreement was unconscionable, he was incompetent when he signed the agreement, and Gretchen Vann fraudulently induced him to sign the agreement. In the alternative, James Vann moved to enforce certain provisions of the property settlement agreement.

[¶ 7] The district court held a hearing on the motion on July 29, 2008. In an October 2008 order, the district court found the value of the parties' assets at the end of the marriage was $1,022,000, Gretchen Vann retained cash and property valued at $900,000, and James Vann received $122,000 of the marital estate. The district court concluded James Vann was not a victim of fraud, he was competent to enter into the property settlement agreement, and the agreement was not unconscionable.

[¶ 8] James Vann moved to amend the pleadings and for a new trial in November 2008. In his accompanying brief, he alleged the district court erroneously valued the parties' assets at the time of the divorce and requested the court to order Gretchen Vann to give him various personal property items. In December 2008, the district court denied James Vann's motion to amend the pleadings and for a new trial, concluding it had reviewed the findings of

fact and the findings of fact accurately reflected the court's determination of the facts in the case.

[¶ 9] James Vann appeals, arguing the district court abused its discretion in denying his motion to vacate the judgment on the basis that the agreement was not unconscionable and, in the alternative, that the district court erred in not enforcing the property settlement agreement.

## II

[¶ 10] This Court reviews a district court's denial of a motion to vacate a judgment for an abuse of discretion. *Krizan v. Krizan*, 1998 ND 186, ¶ 13, 585 N.W.2d 576. "We do not determine whether the court was substantively correct in entering the judgment from which relief is sought, but determine only whether the court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not established." *Knutson v. Knutson*, 2002 ND 29, ¶ 7, 639 N.W.2d 495. A district court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* Under N.D.R.Civ.P. 60(b)(iii), a district court may relieve a party from a final judgment for fraud, misrepresentation, or other misconduct of an adverse party. Under N.D.R.Civ.P. 60(b)(vi), a district court may relieve a party from a final judgment for any other reason justifying relief. "Rule 60(b) attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done, and, accordingly, the rule should be invoked only when extraordinary circumstances are present." *Knutson*, 2002 ND 29, ¶ 7, 639 N.W.2d 495.

[¶ 11] "If the judgment sought to be set aside is entered based on a stipulation of the parties, the party challenging the judgment has the additional burden of showing that under the law of contracts there is justification for setting aside the stipulation." *Id.* at ¶ 8. "A district court, in considering whether a settlement agreement between divorcing parties should be enforced, should make two inquiries: (1) whether the agreement is free from mistake, duress, menace, fraud, or undue influence; and (2) whether the agreement is unconscionable." *Id.* In a divorce, whether a property settlement agreement is unconscionable is a question of law, but "turns on factual findings related to the relative property values, the parties' financial circumstances, and their ongoing need." *See Binek v. Binek*, 2004 ND 5, ¶ 10, 673 N.W.2d 594. On appeal, findings of fact will not be reversed unless they are clearly erroneous. N.D.R.Civ.P. 52(a). "A finding of fact is clearly erroneous if it has no support in the evidence, or even if there is some supporting evidence, the reviewing court is left with a definite and firm conviction a mistake has been made, or the decision was induced by an erroneous view of the law." *Weber v. Weber*, 1999 ND 11, ¶ 8, 589 N.W.2d 358.

[¶ 12] A district court must equitably distribute the parties' property and debts when granting a divorce. N.D.C.C. § 14–05–24(1). We have encouraged parties to reach peaceful settlements of disputes in divorce matters because there is "strong public policy favoring prompt and peaceful resolution of divorce disputes." *Knutson*, 2002 ND 29, ¶ 8, 639 N.W.2d 495. A district court should generally accept property settlement agreements from competent parties who have voluntarily stipulated to the disposition of their marital property. *Kramer v. Kramer*, 2006 ND 64, ¶ 6, 711 N.W.2d 164. "District courts, however, should not blindly accept property settlement agreements." *Id.* at ¶ 7. "A

district court's duty to make an equitable distribution of marital property under N.D.C.C. § 14–05–24 includes the authority to decide whether a settlement agreement was executed as a result of mistake, duress, menace, fraud, or undue influence under N.D.C.C. § 9–09–02(1)." *Id.*

### III

[¶ 13] On appeal, James Vann argues the district court abused its discretion by denying his motion to vacate the divorce judgment because the property settlement agreement was procedurally and substantively unconscionable.

[¶ 14] We explained unconscionable agreements in *Eberle v. Eberle*, 2009 ND 107, ¶ 18, 766 N.W.2d 477 (citations omitted):

> An agreement is unconscionable if it is one no rational, undeluded person would make, and no honest and fair person would accept, or is blatantly one-sided and rankly unfair. Unconscionability is a doctrine by which courts may deny enforcement of a contract because of procedural abuses arising out of the contract formation, or because of substantive abuses relating to the terms of the contract. To determine a settlement agreement is unconscionable there must be some showing of both procedural and substantive unconscionability and courts must balance the various factors, viewed in totality, to make its determination. Procedural unconscionability focuses on the formation of the agreement and the fairness of the bargaining process. Substantive unconscionability focuses on the harshness or one-sidedness of the agreement's provisions.

[¶ 15] James Vann contends the agreement is procedurally unconscionable because it was drafted by Gretchen Vann's attorney, he was not represented by an attorney, he never read the agreement,

and he was suffering from alcoholism, depression, and anxiety when he signed it. James Vann contends the agreement is substantively unconscionable because it is one-sided and consideration of the *Ruff–Fischer* guidelines establishes the agreement was unfair. Finally, James Vann argues the district court clearly erred in valuing the parties' assets, and the corrected valuation of the assets proves the property settlement agreement was unconscionable.

### A

[¶ 16] James Vann first argues the property settlement agreement was procedurally unconscionable because Gretchen Vann's attorney drafted the agreement and James Vann was not represented by an attorney. We have expressed that the involvement of only one attorney is troubling. *Weber*, 1999 ND 11, ¶ 18, 589 N.W.2d 358. However, that fact alone does not conclusively establish the parties' agreement was unconscionable. *See Kramer*, 2006 ND 64, ¶ 11, 711 N.W.2d 164. James Vann did not present any evidence that he was "prevented from or unable to secure independent legal advice." *See Terry v. Terry*, 2002 ND 2, ¶ 5, 638 N.W.2d 11. The property settlement agreement, that both parties signed, provides:

> [Gretchen Vann] was represented by counsel and [James Vann] had the opportunity to consult with counsel of his own choosing, and either did consult with counsel, or had the opportunity to consult with such counsel if [James Vann] so chose, prior to executing this Stipulation and Agreement.

James Vann also signed an accompanying affidavit to the property settlement agreement, stating he had the opportunity to be represented by counsel before signing the agreement. The district court found

James Vann had the property settlement agreement for more than a month. Based on these facts, we conclude the involvement of only one attorney does not establish the agreement was procedurally unconscionable.

[¶ 17] James Vann also argues he never read the property settlement agreement. The district court found James Vann had the agreement for more than a month, and James Vann did not present any evidence that he was precluded from reading the property settlement agreement during that time. Further, the parties presented conflicting evidence concerning whether James Vann read the property settlement agreement before he signed it. In James Vann's affidavit in support of his motion to vacate the divorce judgment, he alleged he did not believe he read the divorce papers before he signed them. Gretchen Vann testified that, immediately before James Vann signed the property settlement agreement, she asked him if he had read it. He told her he had not. Gretchen Vann testified she then told James Vann to read it, but he said he did not care and signed it anyway. The district court was presented with conflicting evidence concerning the circumstances of the signing of the property settlement agreement. The district court is in a much better position to weigh demeanor and credibility of witnesses, and we will not reweigh the evidence on appeal. *Gustafson v. Gustafson*, 2008 ND 233, ¶ 11, 758 N.W.2d 895. Finally, absent any evidence James Vann was precluded from reading the property settlement agreement, he is not excused from his obligation to read a legal document before signing it. *See Kramer*, 2006 ND 64, ¶ 12, 711 N.W.2d 164 (citations omitted) (rejecting husband's claim that he had not read the property settlement agreement before signing it because a "person having capacity and opportunity to read [a] contract without being misled as to its contents cannot avoid [the] contract on ground of mistake if person signs [the] contract without reading it").

[¶ 18] Finally, James Vann argues he was suffering from alcoholism, depression, and anxiety when he signed the property settlement agreement. The district court found James Vann understood the agreement and was competent when he entered into the agreement. The district court found the only credible evidence about James Vann's state of mind when he signed the property settlement agreement came from Gretchen Vann's testimony. Gretchen Vann testified James Vann had not consumed any alcohol for three full days and he was coherent and not impaired when he signed the agreement. The only evidence James Vann presented in regard to his state of mind when he signed the property settlement agreement was testimony from a mental health counselor he saw seven weeks after he signed the agreement. The counselor had no independent knowledge that James Vann suffered from alcoholism, depression, and anxiety when he signed the property settlement agreement. Based on the evidence, the record supports the district court's finding that James Vann was competent and understood the agreement when he signed it, and James Vann failed to establish the property settlement agreement was procedurally unconscionable.

**B**

[¶ 19] James Vann argues the property settlement agreement was substantively unconscionable. In support, James Vann asserts the agreement left him with far less than he brought into the marriage, is one-sided because it left him with only 7.5 percent of the assets, and imposes a severe hardship on him. He also contends that consideration of the

*Ruff–Fischer* guidelines establishes the agreement was unfair.

[¶ 20] "Substantive unconscionability focuses on the terms of the agreement and their harshness or whether the terms are one-sided." *Eberle*, 2009 ND 107, ¶ 33, 766 N.W.2d 477. In *Crawford v. Crawford*, 524 N.W.2d 833 (N.D.1994), we held a divorce judgment should have been vacated because the settlement agreement was unconscionable. In *Crawford*, the parties had been married for fifteen years and had four children. *Id.* at 834. When the parties divorced, the husband earned $130,000 a year, and the wife earned $3,600 a year. *Id.* The parties signed a settlement agreement, whereby the husband was awarded custody of the children, received the marital home, paid for the wife's vehicle, attorney's fees, and paid her $250 per month for a six-month period. *Id.* at 835. The agreement provided that the wife pay the husband $15 per month in child support and receive visitation rights. *Id.* The district court entered a judgment incorporating the stipulated settlement agreement. *Id.* Five months after the district court entered the judgment, the wife retained an attorney and moved for relief from the judgment. *Id.* The district court denied her motion. *Id.* We reversed the district court's denial of her motion to vacate the divorce judgment, holding that the agreement was unconscionable because it was "blatantly one-sided and so rankly unfair under the uncovered circumstances" that we would not enforce it. *Id.* at 836.

[¶ 21] This case is distinguishable from *Crawford*. James Vann and Gretchen Vann were married for approximately seven years and were separated for part of that time. The parties had no children during the marriage and neither party was earning income from employment when the parties signed the property settlement agreement. The property settlement agreement provided that Gretchen Vann receive a 2006 Honda Civic; 2000 Dodge Durango; the residence and personal property in Forman, North Dakota, valued at $50,000; the residence and personal property in Portland, Oregon, valued at $650,000; the general store in Rutland, North Dakota, valued at $250,000; a rental home in Rutland, North Dakota, valued at $20,000; and $525,000 in financial accounts. The property settlement agreement provided that James Vann receive a 1997 Jeep, valued at $5,000; a 1952 MG, valued at $25,000; a firearms collection, valued at $25,000; furniture, valued at $15,000; his family's heirlooms; and a $50,000 cash settlement to be paid by Gretchen Vann. The property settlement agreement gave Gretchen Vann more assets than James Vann. However, it is not so one-sided as to make it unconscionable. Gretchen Vann brought $2.5 million into the marriage, while James Vann only brought his interest in his father's $350,000 home and a 401k worth $8,000. James Vann claims the agreement is unconscionable because the property settlement agreement left him with only 7.5 percent of the assets. However, James Vann only brought 12 percent of the assets into the marriage. Furthermore, the record reflects James Vann quit his $80,000 a year job when the parties married, has significant skills, and likely has the ability to acquire future employment. James Vann testified that his prior employment included brokering aircraft, running a flight school, working in the publishing industry, serving as a vice-president for a corporation, and working at a number of other companies where he earned similar pay to what he was earning when he married Gretchen Vann. He stated that he currently had a pilot's license, but he had not looked into the recurrent training needed to re-enter that field. Although James Vann testified that he has not sub-

mitted a job application since the parties' divorce, there is no evidence he would be unable to obtain a job where he could earn a comparable salary to what he earned when the parties married. Further, unlike the wife in *Crawford* who moved to vacate the divorce judgment within five months of filing the settlement agreement, James Vann waited nearly a year to bring a motion to vacate the divorce judgment. While James Vann's delay in bringing the motion does not prohibit his motion, it is a factor to consider when determining whether the district court abused its discretion in denying his motion. *See Eberle*, 2009 ND 107, ¶ 31, 766 N.W.2d 477.

[¶ 22] In *Weber v. Weber*, we held the district court did not abuse its discretion in vacating a divorce judgment because the property settlement agreement was unconscionable. 1999 ND 11, ¶ 19, 589 N.W.2d 358. In *Weber*, the wife filed for divorce after twenty-seven days of marriage. *Id.* at ¶ 2. Two days later, the husband, unrepresented by counsel, signed a property settlement agreement. *Id.* On the same day the property settlement agreement was filed in district court, the husband retained an attorney and moved to set aside the agreement. *Id.* at ¶ 3. The district court "found the agreement to be 'one-sided,' based on the brevity of the marriage, the additional assets of $75,000 [the wife] received during the brief marriage, the gifts given to [the wife] by [the husband] in this very short marriage, and [the husband] giving up his only residence." *Id.* at ¶ 13. We concluded the property agreement was one-sided, caused the husband a great hardship, was formed hastily, and the wife was represented by counsel, while the husband was not. *Id.* at ¶¶ 15–18. We rejected the wife's argument that the agreement was not unconscionable because the husband was awarded 73 percent of the marital estate. *Id.* at ¶ 16. We explained that the wife's argu-

ment failed to consider that the husband brought nearly 100 percent of the estate into the marriage. *Id.* In concluding the district court did not abuse its discretion in vacating the divorce judgment, we also noted that the husband moved to set aside the property settlement agreement on the same day the agreement was filed with the district court. *Id.* at ¶ 18. We explained that, "[t]he action by Weber to rescind immediately after having signed the agreement is also persuasive." *Id.*

[¶ 23] This case is distinguishable from *Weber*. In *Weber*, the property settlement agreement left the husband with much less than he brought into the marriage, while leaving the wife with much more. The husband in *Weber* had already given the wife a large amount of assets over their brief marriage. Here, both James Vann and Gretchen Vann will be leaving this marriage with less than they had before the marriage. Likewise, James Vann did not provide Gretchen Vann with a large amount of assets during the marriage. James Vann admitted that, with the exception of his father's house, the parties lived off Gretchen Vann's assets during their seven-year marriage.

[¶ 24] Furthermore, the timing in *Weber* was persuasive. In *Weber*, the husband signed the property settlement agreement within two days of the wife's filing for divorce, and we explained we were troubled by the haste with which the agreement was entered. In this case, there is not any evidence James Vann hastily entered into the property settlement agreement. The testimony supports the district court's finding that James Vann had more than one month to review the property settlement agreement.

[¶ 25] James Vann also argues consideration of the *Ruff–Fischer* guidelines supports a finding that the property

settlement agreement was unfair. In *Weber,* we acknowledged that the *Ruff–Fischer* guidelines are not the standard in a domestic relations case to determine the unconscionability of a property settlement agreement. 1999 ND 11, ¶ 17, 589 N.W.2d 358. However, we stated a district court may consider the *Ruff–Fischer* guidelines when determining unconscionability of a settlement agreement of divorcing parties because application of the guidelines may be helpful because "a domestic relations agreement should not be scrutinized in the same way as a business contract." *Id.* Under the *Ruff–Fischer* guidelines, a district court considers:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Hitz v. Hitz,* 2008 ND 58, ¶ 11, 746 N.W.2d 732.

[¶ 26] The district court's order reflects it considered the *Ruff–Fischer* guidelines. The district court found the parties married in 1999; the marriage was a short-term marriage, and the parties were separated for part of the marriage; James Vann had a significant drinking problem and Gretchen Vann acted as a caregiver for James Vann since 2003 when the alcohol consumption increased dramatically; Gretchen Vann brought the vast majority of the marital assets into the marriage; Gretchen Vann brought $2.5 million into the marriage, and James Vann brought $350,000 into the marriage; the marital estate had diminished during the marriage; and James Vann was able to earn $80,000 per year at the time of the marriage. Although the district court was not required to consider the *Ruff–Fischer* guidelines when deciding whether the property settlement agreement was unconscionable, we conclude its consideration supports its conclusion that it was not an unconscionable agreement. The district court did not err in concluding James Vann did not establish the property settlement agreement was substantively unconscionable.

## C

[¶ 27] James Vann argues the district court clearly erred in valuing the parties' assets and the correct valuation establishes the agreement was unconscionable. He contends the district court should have valued the parties' assets at the time of the divorce, as opposed to valuing the assets at the time of the motion to vacate the divorce judgment. James Vann argues the district court's errors in valuation caused it to conclude the agreement was not unconscionable. After reviewing the record, it appears that the district court's findings reflect the values of the parties' assets at the time of the motion to vacate the divorce judgment. While the district court should have valued the assets at the time of the divorce, we conclude this error did not affect the district court's conclusion that the property settlement agreement was not unconscionable. When deciding whether the property settlement agreement was unconscionable, the district court relied on three factors. The district court concluded "[b]ased on the duration of this short term marriage of between six and seven years, the fact that [James Vann] was able to earn a substantial income, around $80,000.00 at the time of the marriage, and the source of the vast majority of the marital estate being cash and assets

866

brought into the relationship by [Gretchen Vann], the Marital Termination Agreement is not unconscionable but is fair and reasonable based on the facts of the marriage." The district court focused on the length of the marriage, James Vann's earning capacity, and the origin of the property when it concluded the property settlement agreement was not unconscionable.

[¶ 28] Furthermore, after the district court issued its order denying James Vann's motion to vacate the divorce judgment, James Vann moved to amend the district court's findings and for a new trial. In a detailed brief, James Vann argued the evidence did not support the district court's findings regarding the length of the marriage, the valuation of the assets, and his earning ability. The district court issued an order, noting that it had reviewed its findings of fact and found that James Vann's motion to amend the district court's findings was without merit. The court stated, "The Findings of Fact made by the court, in writing and on the record, accurately reflect the court's determination of the facts in this matter." The district court was aware that its findings pertaining to the valuation of the parties' assets was not correct. Despite that information, it still concluded that the property settlement agreement was not unconscionable.

[¶ 29] James Vann also argues the district court erred in finding he was able to earn $80,000 at the time of the marriage because he had not worked in eight years, he did not have a college degree, he could no longer work in the alcohol industry, and he was suffering from alcoholism, depression, and anxiety. The district court did not find James Vann could earn $80,000 after the divorce. It found he had quit a job where he had earned $80,000 when the parties married. The evidence supports this finding. Therefore, we conclude the

district court did not err in finding James Vann earned $80,000 at the time of the marriage.

[¶ 30] Based on this record, we conclude the district court did not abuse its discretion in refusing to vacate the divorce judgment.

IV

[¶ 31] In the alternative, James Vann argues that the district court erred in not enforcing the property settlement agreement. He claims he requested certain personal property items and reimbursement for funds Gretchen Vann took out of his account and the district court did not address his request.

[¶ 32] James Vann's alternative request for relief was part of his motion to vacate the divorce judgment. The district court ordered that James Vann's "Motion to Vacate Judgment is in all things denied." We have explained that "[i]f we are unable to determine whether the court considered and resolved a critical issue, particularly when conflicting evidence has been presented, remand is necessary to afford the court an opportunity to resolve the issue." *Berg v. Berg*, 2000 ND 37, ¶ 8, 606 N.W.2d 903. In this case, we conclude remand is unnecessary because there is not conflicting evidence regarding James Vann's request for alternative relief.

[¶ 33] In an affidavit in support of his motion to vacate the divorce judgment, James Vann requested personal property including cookbooks, cookware, utensils, family heirlooms, clothes, personal property, a barbeque grill, and tax information. He also requested reimbursement for two occasions in which Gretchen Vann used a debit card on his checking account, totaling $1,119.33. James Vann did not present any evidence at the motion to vacate hearing that established he was entitled, under the property settlement agreement or the

divorce judgment, to the personal property he requested or reimbursement from Gretchen Vann.

[¶ 34] The testimony presented at the hearing revealed that Gretchen Vann was willing to return the personal property James Vann received under the property settlement agreement. Gretchen Vann testified she paid approximately $7,000 to have James Vann's furniture in Oregon shipped to North Dakota and arranged and paid for storage. She testified he could retrieve this property at any time, and she would like him to take possession of the property. James Vann did not testify he was unable to retrieve the items he was awarded in the property settlement agreement.

[¶ 35] James Vann also requested the district court enforce the property settlement agreement so he could receive other household items, including cookbooks, cookware, utensils, and a barbeque grill. However, the property settlement agreement did not provide that he was to receive those items. Provision 3F of the property settlement agreement provided Gretchen Vann was to receive all personal property from the Forman, North Dakota, residence. Provision 3G of the property settlement agreement provided Gretchen Vann was to receive all personal property from the Portland, Oregon, residence, except property specifically awarded to James Vann. Provision 4A of the property settlement agreement provided James Vann was to receive the personal property of the "furniture in family room and master bedroom set now situated in the residence at 21005 NE Sauvie Island Road in Portland Oregon." Provision 4D of the property settlement agreement provided James Vann was to receive "Family Heirlooms from his family" but he did not argue any of the items he listed fell into this category. The property settlement agreement did not award James Vann the household items he requests. We conclude the district court did not err in denying James Vann's request to enforce the property settlement agreement because the agreement did not provide that James Vann receive the additional items he now requests.

[¶ 36] James Vann also requested that the district court enforce the property settlement agreement to reimburse him for $1,119.33 Gretchen Vann mistakenly used on his ATM card. However, the property settlement agreement did not provide that James Vann should be reimbursed $1,119.33 for Gretchen Vann's mistaken use of his ATM card. Therefore, James Vann had no remedy under the property settlement agreement for the district court to enforce. Nonetheless, the testimony at the hearing establishes James Vann received even more assets from Gretchen Vann than was provided for by the property settlement agreement.

[¶ 37] The agreement provides that Gretchen Vann is to pay James Vann a $50,000 cash settlement. Gretchen Vann testified she paid James Vann $97,554.59. Gretchen Vann testified that after the divorce, the Oregon residence sold for $664,854.59. She testified she deposited that money into a joint account, withdrew $610,000 and left the remaining $54,854.59 for James Vann as his $50,000 cash settlement. Gretchen Vann testified her name was later removed from the account. Gretchen Vann also testified she gave James Vann an additional $42,700 between June and September 2007. She introduced checks into evidence as proof of the transfers. Gretchen Vann admitted she mistakenly withdrew $1,119.33 from the joint account after the parties divorced, but testified she has paid him more than she was required under the agreement.

[¶ 38] James Vann testified he does not recall whether the $664,854.59 in proceeds from the sale of the Oregon home was deposited into the parties' joint account after the divorce. He also testified he did not know where the proceeds from the sale of the Oregon home went. James Vann stated he did not remember receiving $50,000 in proceeds from the sale of the home. James Vann admitted Gretchen Vann deposited checks totaling at least $25,200 into the parties' joint checking account.

[¶ 39] At the hearing, James Vann was questioned about his failure to produce the bank records that showed that Gretchen Vann had deposited money into his checking account to satisfy her cash settlement obligation and was questioned about the amount of money he had already received from her:

> [Gretchen Vann's attorney]: Mr. Vann, how much do you recall receiving from Gretchen Vann since the time of the divorce? And I'm talking about in cash payments through either a check or cash distribution.
>
> [James Vann]: I have no recollection.
>
> [Gretchen Vann's attorney]: Do you agree that that's an important thing for the court to know?
>
> [James Vann]: I guess.
>
> [Gretchen Vann's attorney]: You're asking the court for more property at this point in time. Correct?
>
> [James Vann]: Yes.
>
> . . . .
>
> [Gretchen Vann's attorney]: You can't tell the court today how much you've already received?
>
> [James Vann]: No.

[¶ 40] James Vann did not introduce any evidence that Gretchen Vann had not paid him $50,000 for his cash settlement. The testimony at the hearing establishes he has been paid more than was agreed upon through the property settlement agreement and there is nothing in the property settlement agreement for the district court to enforce. Therefore, we conclude the district court did not err in denying James Vann's motion to enforce the property settlement agreement.

V

[¶ 41] James Vann appeals the district court's denial of his motion to amend the pleadings and for a new trial. James Vann brought these motions, alleging the district court made an error in valuing the assets received by Gretchen Vann at the time of the divorce and requested that the court reconsider his motion to vacate. The district court concluded its Findings of Fact made in its denial of the motion to vacate accurately reflected the court's determination of the facts. The district court also concluded that "none of the articulated criteria in Rule 29 of the N.D.R.Civ.P. were present." James Vann fails to address the district court's denial of these motions in his appellate brief. These issues are not stated, there is no argument, and there are no citations provided in James Vann's appellate brief. Our Court has held that a party waives an issue by not providing supporting argument or citations to relevant authorities. *Olander Contracting Co. v. Gail Wachter Investments*, 2002 ND 65, ¶ 27, 643 N.W.2d 29; *Molitor v. Molitor*, 2006 ND 163, ¶ 11, 718 N.W.2d 13. We will not review on appeal an issue not fully briefed and argued.

VI

[¶ 42] We conclude the district court did not abuse its discretion in denying James Vann's motion to vacate the divorce judgment. We further conclude the district court did not err in denying James

Vann's motion to enforce the property settlement agreement. We affirm the district court's order denying James Vann's motion to vacate the divorce judgment and the district court's order denying his motion to amend the pleadings and for a new trial.

[¶ 43] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 44] I concur in the result in this case because I believe it is consistent with my dissent in *Eberle v. Eberle*, 2009 ND 107, 766 N.W.2d 477, but inconsistent with the majority's action there. Here the majority affirms the district court's denial of James Vann's motion to vacate the judgment, while in *Eberle* it reversed the district court's denial of Heidi Eberle's motion to vacate the judgment. Both settlement agreements were entered without the complaining parties being represented by counsel; both motions for relief from the judgment were made after lengthy delay.

[¶ 45] The dichotomy here is similar to the 1994 dichotomy in *Clooten v. Clooten*, 520 N.W.2d 843 (N.D.1994), and *Crawford v. Crawford*, 524 N.W.2d 833 (N.D.1994). In *Clooten*, this Court upheld the district court's denial of Robert Clooten's motion for relief from the judgment while it reversed the district court's denial of Leslie Faye Crawford's motion for relief from the judgment. Justice Neumann and I saw no abuse of discretion in either case.

[¶ 46] As Justice Neumann wrote in his dissent, in which I joined, in *Crawford*, 524 N.W.2d at 837, "When the outcome of a case can depend not upon rules, laws and standards of review, but upon what strikes appellate judges as fair and equitable, then this Court has assumed more power than

wise people ought to be comfortable exercising."

[¶ 47] I believe there was no abuse of discretion in any of the four cases discussed here. I would have affirmed all the judgments.

[¶ 48] Dale V. Sandstrom